STATE OF MISSOURI *ex rel.* Attorney-General, Relator, *v.* THE BOATMEN'S SAVINGS INSTITUTION, Respondent.

48  189
158 260

1. *Interest — Usury — Loans — Purchaser of commercial paper — Boatmen's Savings Institution.*— Under the charter of the Boatmen's Savings Institution of St. Louis (Adj. Sess. Acts 1855, p. 149, § 3), the discounting of commercial paper by the bank constituted a loan, and discount at the rate of over eight per cent. reserved would amount to usury. But the bank might purchase bills of exchange at whatever rates might be agreed on between itself and its customers. Usury has no application to such transactions. To constitute usury there must be an express or implied loan. And an allegation that the bank simply purchased bills at figures exceeding the current rates of exchange, with a view to evading the charter restrictions as to interest, would be held on demurrer insufficient to charge usury.

## Quo Warranto.

*H. B. Johnson*, Attorney-General, with whom were *Clover* and *Knox*, for relator, cited Lehigh Bridge Co. v. Lehigh Coal Co., 4 Rawle, Penn., 9; 6 Conn. 209; 14 Ohio, 10; State Bank v. State, 1 Black, 279; Canal Co. v. R.R. Co., 4 Gill & Johns. 1; Trustees of McIntire Poor School v. Zanesville Canal & Man. Co., 9 Ohio, 203; Penobscot Boom Corp. v. Lamson, 16 Me. 224; Hodson v. Copeland, *id.* 314; Atchafalaya Bank v. Dawn, 13 La. 497; Charles River Bridge v. Warren Bridge, 7 Pick., Mass., 371; All Saints Church v. Lovett, 1 Hall, N. Y., 198; John v. Farmers' & Mechanics' Bank of Indiana, 2 Blackf., Ind., 367; Hamtramck v. Bank of Edwardsville, 2 Mo. 169; Day v. Stetson, 8 Greenl. 372; State v. N. O. Gaslight & Banking Co., 2 Rob., La., 529; 5 Wheat. 658–9; 9 Cranch, 51–2; Rex v. Passmore, 3 T. R. 246; Eastern Archi-

·pelago v. Regan, 22 Eng. L. & Eq. 238, 337-8; 18 Eng. L. & Eq. 167; Rex v. Corporation of Carmarthen, 2 Burr. 869; King v. Ogden *et al.*, 10 Bd. 230; Tancred on Quo Warranto, 14; 28 Penn. 387; 3 Harg. C. & Tr. 545; 2 T. R. 515; 10 Ohio, 548.

*Gantt*, and *Lackland*, *Martin & Lackland*, for respondent.

The statute (Adj. Sess. Acts 1855, p. 149, § 3) draws a plain distinction between loans and discounts. The counsel contend that the discount was of accommodation paper and a mere colorable transaction, being in fact a loan and nothing more. But the pleadings do not show this. (McLean, Assignee, v. Lafayette Bank, 3 McLean, 587 *et seq.*; Rock River Bank v. Sherwood, 10 Wis. 233 *et seq.*)

CURRIER, Judge, delivered the opinion of the court.

This is a proceeding in the nature of a writ *quo warranto*, prosecuted by the attorney-general in behalf of the State, with a view to forfeiture of the defendant's charter. Supposed violations of the charter, in loaning money and discounting paper at usurious rates, constitute the groundwork of the prosecution.

As showing such violation, it is alleged that said banking institution, in willful disregard of the restrictions of its charter, has, for a long time past, been in the constant practice of loaning its money by discounting promissory notes at exorbitant and usurious rates of interest, far exceeding the rate of eight per cent. per annum prescribed in the charter, and at the rate of eighteen per cent. per annum; and that defendant has also, in repeated instances during the years 1868, 1869 and 1870, been in the " constant practice " of loaning its money at a rate of interest exceeding eight per cent. per annum; and further, that said defendant, during said years, has been in the constant practice of buying bills of exchange at a far greater rate than the current rates of exchange, with intent thereby to evade and violate the provisions of said charter.

Three classes of facts are here set out as constituting violations of the charter: first, the loaning of money in the way of dis-

counts at usurious rates ; second, the loaning of money at usurious rates without specifying the manner of the loan ; third, the buying of bills of exchange at rates exceeding the current rates of exchange, with intent to evade and violate the charter restrictions as to the rate of interest on loans.

The relator's replication, in which these facts are alleged, is demurred to, and the question is thus raised whether the facts set out in the pleading, assuming them to be true, show violations of the defendant's charter of a character to warrant its forfeiture. If the facts show a violation of the charter at all, it has not been contended that they are not of a character to warrant this proceeding. The defendant's proposition is that no violations of the charter are shown ; in other words, that the facts alleged do not, under the charter, constitute usury.

By the charter the bank was authorized to "lend money at any rate of interest not exceeding eight per cent. per annum," and also "to discount, buy and sell promissory notes, bonds, bills of exchange, and other securities." (Adj. Sess. Acts 1855, p. 149, § 3.)

One point made by the defendant's counsel is that the eight per cent. restriction has no relation to the discounting of commercial paper, and that the charter therefor imposed no restrictions respecting rates of discount. A distinction is thus sought to be drawn between loans and discounts as regards the charter restrictions upon the reservation of interest.

The distinction is unsubstantial. The term "discount," as a substantive, means the interest reserved from the amount lent at the time of making the loan ; as a verb, it is used to denote the act of giving money for a note or bill of exchange, deducting the interest. In a discount the interest is reserved, or collected in advance ; while in ordinary loans the interest is paid, or agreed to be paid, after it is earned. In either case the transaction constitutes a loan, and a reservation of interest beyond the specified eight per cent. is usury, and the payment of interest in advance does not change the usurious character of the transaction. It cannot be imagined that the Legislature in granting the charter

intended to restrict the rate of interest to eight per cent. on ordinary loans, and at the same time to leave the corporation free to charge and collect whatever rate of interest it might deem proper, and the customer might assent to, where the loaning transaction should be given the form of a technical discount. Such a construction would be in manifest contempt of the will and wisdom of the Legislature, whatever form a loan might take, to limit the rate of interest to the prescribed rate of eight per cent. per annum.

Again, it is objected that the relator's replication, although it may abundantly show the making of usurious contracts, fails to show that the usurious interest reserved by these contracts was in fact collected and realized by the bank.

The charter says nothing about collecting interest. The prohibition is against the loaning of money at usurious rates — against the making of usurious contracts. But the replication not only shows that the bank loaned its funds at rates in excess of the prescribed eight per cent., but that it in fact collected interest at the agreed rates, and collected it in advance, for that is what is meant by discounting. The discount, as already remarked, is the interest reserved and paid at the date of the loan. The collection or reservation of the interest in advance is of the substance of the thing. Besides, the replication follows and adopts the very language of the statute.

A strong argument might be made against the wisdom of usury laws in general. It might be better for society if they were all abolished. But that presents a question of public policy which it is alone for the legislative department of the government to consider and adjust. In granting the charter in question, the Legislature saw fit to restrict the rates of interest to eight per cent. ; and this restriction, if the averments of the replication are true, the defendant, in the exercise of its corporate powers, has failed to respect. The form of the replication may be subject to criticism, but the material facts, showing willful and long-continued violations of the charter in making loans, are sufficiently averred, and that is all we are called upon to declare on the present occasion.

I do not see that the replication is strengthened by the averments in relation to the purchase of bills of exchange. It was competent and lawful for the bank to make such purchase at whatever rates might be agreed upon between itself and its customers. The charter authorizes such purchases, and does not assume to regulate the rates. Usury has no application to such transactions. In order to constitute usury there must be an express or an implied loan. (Nichols v. Fearson, 7 Pet. 109.) In the absence of a loan there can be no usury. Usury is not predicable of a purchase. But the replication affirms that the transactions complained of in this connection were purchases and not loans, and then avers that the purchases were made under the influence of improper motives, namely, with a view to the evasion of the charter restriction as to interest. If the transactions were in themselves legal, the motive that inspired them would not render them usurious. It is not alleged that the transactions in question were loans disguised as purchases, the form of a purchase being resorted to as a means of concealing the real character of what was done. The allegation is that the bank purchased bills at rates exceeding the current rates of exchange. That being so, the acts complained of being purchases, there is no ground for imputing usury; for, as already observed, usury applies to loans and not to purchases. There can be no usury in the absence of a loan; but a loan, in fact, may take the outward form and appearance of a purchase. It is the substance of the thing, and not its form, that determines its character. But it is averred here that the substance of the things done was the making of purchases, not the making of loans in the guise of purchases.

The other averments of the replication, however, sufficiently affirm violations of the charter, and the demurrer will therefore be overruled. The other judges concur.