# GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant, v. E. H. WEINRICH, Respondent.*

Kansas City Court of Appeals. May 26, 1924.

1. **USURY: Mortgages: Debt Secured by Chattel Mortgage, if Tainted With Usury, Renders the Chattel Mortgage Void.** Under section 6496, Revised Statutes of 1919, a debt secured by chattel mortgage if tainted with usury, renders the chattel mortgage void.

2. ————: **Search to Determine Whether Usury Has Been Exacted Should go to the Very Substance.** In the investigation of a transaction as to whether usury has been exacted the law intends that the search shall penetrate, through form, device, or makeshift, to the very substance.

3. ————: **In Determining Whether Transaction is Usurious, Form in Which Agreement is Made is Immaterial.** In an investigation as to whether a transaction is usurious, the form in which the agreement is made, and the more or less ingenious phrases in which the contract is negotiable, are immaterial.

4. ————: **Words and Phrases: Usury Defined.** Usury is the exacting, taking or receiving of a greater rate of interest than is allowed by law for the use or loan of money.

5. ————: **For Transaction to be Usurious There Must be the Exaction of More Than Legal Rate of Interest for Loan or Forbearance of the Debt.** In order for a transaction to be usurious there must be in it a loan at more than the legal rate of interest, or the exaction of a greater than the legal rate for the forbearance of a debt or sum of money due.

6. ————: **Sale in Good Faith not Open to Objection of Usury.** A sale in good faith of property, merchandise, or of an indorsement or guaranty, or even of credit, if the seller has no other interest in the transaction, is valid, and not open to the objection of usury whatever the price.

7. ————: **Note for Purchase Price Usurious if it Calls for More Interest Than Law Permits.** The fact that a note is given for the purchase price of an article will not prevent the note from being usurious if the note calls for more interest than the law allows.

General Motors Accept. Corp. v. Weinrich.

8. ———: The Bona-fide Sale or Discounting of a Note not Usurious. The sale or discounting of a note on such terms as may be agreed upon, however small the price, is not usurious.

9. ———: Giving of Note to Person Other Than One Making Loan Held Not Sufficient to Evade Statute Against Usury. Where there is no sale in good faith but a mere loan, the fact that the note is made to one person who, acting as a conduit, immediately endorses it over to a third person who advances the money is not sufficient to evade the statute against usury.

10. ———: Not Presumed, Must be Clearly Proved and Burden of Establishing Usury is on the One Asserting it. Usury is not presumed, must be clearly proved, and the burden of establishing it is on the one asserting it.

11. ———: Mortgages: Evidence Held Insufficient to Show Note Usurious so as to render Chattel Mortgage Void. Where an automobile was sold by a dealer in good faith to the defendant on time sale plan for more than the cash price, defendant in lieu of cash giving his note at legal rate of interest, which dealer subsequently sold to plaintiff at discount equal to excess of price above cost price, *held* that note was not usurious so as to invalidate chattel mortgage securing it.

---

*Headnotes 1. Usury, 39 Cyc., p. 995; 2. Usury, 39 Cyc., p. 918; 3. Usury, 39 Cyc., p. 918; 4. Usury, 39 Cyc., p. 888; 5. Usury, 39 Cyc., p. 945; 6. Usury, 39 Cyc., p. 926; 7. Usury, 39 Cyc., p. 926; 8. Usury, 39 Cyc., p. 932; 9. Usury, 39 Cyc., p. 926; 10. Usury, 39 Cyc., pp. 1051, 1054; 11. Usury, 39 Cyc., p. 1051; 12. Usury, 39 Cyc., p. 1055.

Appeal from the Circuit Court of Pettis County.—*Hon. Dimmitt Hoggman*, Judge.

REVERSED AND REMANDED (*with directions*).

*Bohling & Bohling* and *Charles G. Stradella* for appellant.

*Paul Barnett* for respondent.

TRIMBLE, P. J.—This is a replevin suit for possession of an automobile. Plaintiff's rights depend upon the validity of a chattel mortgage which defendant gave thereon. The defense is that the mortgage is void because of usury. At the close of the evidence, the trial

court instructed the jury to find for defendant upon that question. Plaintiff has appealed from the judgment on the verdict thus obtained.

Robert Reuter, a retail dealer in automobiles at Sedalia, advertised some secondhand cars for sale and defendant called at Reuter's place of business to purchase one. None of them, however, suited him, but he did see a new car that caught his fancy and he made overtures to buy it. He told Reuter he had an equity in some property in Windsor, Missouri, and wanted to put this equity in as a cash payment and obtain time on the balance. The dealer and defendant went the next day to Windsor and examined the property. Defendant valued his equity at $800 and wanted to put it in at that amount, but Reuter thought it worth only $600 and they finally agreed on the value of the equity being $600, and for the same to go in the trade at that amount.

The *cash* price of the automobile was $1450, but as defendant was not paying cash, the ''time-selling price'' was fixed at $1501.

Defendant turned the equity over to Reuter and executed to him the chattel mortgage in question. The mortgage recited that defendant had that day purchased the car of Reuter, Mortgagee, ''for the total time price of $1501,'' payable, ''Cash on or before delivery $600, Balance of $901'' in a series of twelve installments, eleven of which were for $75.09 each, due respectively in one, two, three, four, five, six, seven, eight, nine, ten and eleven months after date, and the twelfth for $75.01 due twelve months after date, ''with interest thereon after maturity at the highest lawful rate.''

Defendant also executed to Reuter his promissory note or ''time price obligation,'' dated June 23, 1922, in which he promised to pay to the order of Robert Reuter the sum of $901 ''at the time or times stated in the Schedule of Payments hereon, at the office of General Motors Acceptance Corporation, Railway Exchange Building, Kansas City, Mo., with interest after maturity

at the highest lawful rate." It was provided in said note that a default in the payment of any one or more of said installments rendered the whole note due and payable. The "Schedule of Payments" thus referred to was the same as that specified in the chattel mortgage.

Defendant then signed a "Purchaser's Statement," dated the same day, June 23, 1922, addressed to "Robert Reuter and to General Motors Acceptance Corporation," which recited that "In order to secure credit from the above-named Dealer, and induce the above-named Acceptance Corporation to purchase any purchase money obligation" executed by him in connection with such credit, he gave his name, residence, business, income, place of keeping the automobile and other particulars, together with a statement that he owned an equity of $36,000 in two forms, and of his ability to pay the installments as they became due.

Reuter then signed the following:

"DEALER'S RECOMMENDATION AND ASSIGNMENT TO GENERAL MOTORS ACCEPTANCE CORPORATION:

For the purpose of inducing you to purchase a note signed by the above-named Purchaser and indorsed by the undersigned, the undersigned submits the foregoing statement which the undersigned, believes to be substantially true, unless otherwise hereinafter stated, and certifies that said note arose from the sale of the within described property and that the amount of said note is not more than seventy-five per cent (75%) of the value of said property, as and where delivered, warranting to you that, at the time of the transaction of which this is a part, the title to the aforesaid property was vested in the undersigned free and clear of all liens and encumbrances, and that the undersigned has the right to assign such title.

"The undersigned, for value received, does hereby sell, assign and transfer to General Motors Acceptance Corporation, his, its or their right, title and interest in and to the within mortgage, and the property covered

thereby and authorize said General Motors Acceptance Corporation to do every act and thing necessary to collect and discharge the same.

"IN WITNESS WHEREOF, said undersigned has hereunto subscribed his name this 23rd day of June, 1922.

"ROBERT REUTER."

And he also signed the following endorsement printed on the back of the above-mentioned promissory note:

"For value received, we and each and all of the Indorsers hereon jointly and severally guarantee payment of the within obligation, as and when the same shall become due of any extension thereof in whole or in part, accepting all its provisions, authorizing the maker, without notice to us or either of us, to obtain an extension or extensions in whole or in part, and waiving presentment for payment, demand, protest and notice of protest and non-payment; also agreeing that in case of non-payment of the within obligation when due, suit may be brought by the holder of this note against any one or all of us, at the option of said holder, whether such suit has been commenced against the maker or not and that in any such suit the maker may be joined with one or more or all of us at the option of the holder.

"(Signed) ROBERT REUTER."

Reuter also made out an "Invoice" to defendant showing a bill to him of—

"1    Serial  *  *  *  Oldsmobile Touring Car ....$1450.00    $1450.00
Finance Charge ...........    51.00

.... .... .... .... .... .. .. $1501.00
By allowance on trade ....    600.00
By 12 payments G. M. A. C.
Note .................    901.00

$1501.00

(11—75.09
1—75.01)"

This invoice, and the above mentioned "Purchaser's Statement," "Dealer's Recommendation," note and chattel mortgage, were mailed by Reuter to plaintiff at Kansas City, accompanied by a "Letter of Transmittal" as follows:

"General Motors Acceptance Corporation:—
Gentlemen:

Enclosed is Note, Chattel Mortgage and Purchaser's Statement for purchase as follows:—

Purchaser's name ...... Ernest H. Weinrich
List price (F. O. B. Factory) ....... $
Freight ........................... $
War tax ........................ $ .
Extra equipment ................... $
Total equals Cash Selling Price Special $1450.00
Down payment: Cash      $ None
                   Trade in $   600
Total down payment ...............   600.00
Deferred payment        $    850
G. M. A. C. Differential   $    51
Note for .......................   901.00
Total equals time-selling price ........ $1501.00"

Owing to an error of a few cents made somewhere in the statement of payments, plaintiff refused the offering and returned it to Reuter, but after this was corrected, the plaintiff, on June 29, 1922, purchased the security from Reuter, paying him therefor the sum of $850 which was at a discount of $51.

The following other facts appear in the record:

Plaintiff is a banking institution specializing in automobile paper. It buys notes, mortgages, contracts and trade acceptances, secured by automobiles. Dealers, throughout the United States, in making sales of automobiles, may submit to plaintiff papers which the dealers take in making sales, and if the papers are acceptable to plaintiff, it buys them, but it reserves the right to refuse to take any paper, and does not purchase all papers submitted, but buys the paper or not as it chooses. It

further appears that papers are submitted and looked over and if everything is acceptable and plaintiff desires to buy, its check is sent to the dealer making the sale; that investigation is made of the makers of the notes and also of the dealer selling the cars; that the dealer submits financial statements and may immediately thereafter submit papers, but plaintiff does not have to buy what is submitted; that after plaintiff has investigated and it is found that both dealer and papers are satisfactory, then plaintiff buys the papers.

It further appears that plaintiff furnishes blanks to dealers regardless of whether the latter are accepted to do business with plaintiff or not; that plaintiff does not undertake or bind itself to purchase anything submitted by the dealer; that among these blanks are forms of mortgages and notes and other literature pertaining to the business; that plaintiff has a uniform schedule of rates that are in effect throughout all the States in the Union; that plaintiff has representatives working out of the Kansas City office, calling on dealers, asking them, in the regular routine of business, to send their business to it, that is, to send notes that they take in the purchase of automobiles; that plaintiff furnished blank notes, mortgages and supplies to Reuter; that plaintiff did not instruct Reuter what interest to charge but did furnish him with a rate-card showing the amount of charges on terms of that kind; that this rate-card showed that if the amount to be paid was $850 the note should be made for $901 where the payments were to run for twelve months; that Mr. Reuter, in preparing the mortgage, followed this rate-card and other literature sent him, giving him directions with reference to such matters; that in the Weinrich case the papers were made out at the six per cent rate on the balance of the unpaid part of the car, that is, as the note was to be paid in twelve monthly installments, it was figured at six per cent, that is, interest and handling charge—six per cent of $850 is $51; that the handling charges are fixed for making the loan, which

cover plaintiff's operating expenses, overheads and salaries; that when a mortgage note (called "an offering") is received at the office it is checked over by certain officials of the credit department and passed upon for purchase, which was done in this particular case, and check for $850 was sent to Reuter and the note purchased on June 29, 1922; that plaintiff was induced to purchase the note by Weinrich's financial statement and Reuter's statement and endorsement of the note; that plaintiff relied upon these representations as to the responsibility of the purchaser of the automobile and his standing; that it had examined these before it purchased the note.

It further appears that the note in question bore a 20-cent United States Internal Revenue Stamp, cancelled thus: "Jan. 8, 1922, G. M. A. C.," which are the plaintiff's initials. At the head of the chattel mortgage form which, on being filled out by Reuter, was made the chattel mortgage defendant executed, was printed the following:

"G. M. A. C. 100-10M Sets 1-22

"Approved 12-27-21.

"Duplicate Original—To be sent to General Motors Acceptance Corporation."

Reuter, who was a witness for plaintiff, testified that the price Weinrich was to pay for the car "was supposed to be $1450" and that he "paid $850, supposed to be paid in these notes, plus the interest and handling charge of the G. M. A. C. and the balance an equity in a piece of property down at Windsor;" that he told Weinrich the note was to be taken by the G. M. A. C. He also said Weinrich had to sign an application for that loan addressed to him and to the General Motors Acceptance Corporation; that, under the directions furnished by plaintiff along with the blanks, he added the sum of $51 to cover "interest and handling charge" and made out the note for $901; and that he received $850 for the note.

The affidavit to the replevin suit was made by Reuter and in it he swore that he "makes this affidavit

for and on behalf of the plaintiff and as the agent of the plaintiff at Sedalia.''

He further testified that he ''was the agent representing the plaintiff at the time this car was sold and this mortgage executed'' and further that he was the agent for the General Motors Acceptance Corporation in order to get them loans.  But on redirect examination he said he was agent for plaintiff in that he made a financial statement to the plaintiff, and, whenever he sold a car, made out the papers for the party to whom the car was sold and sent them to the plaintiff for approval; that if the financial statement of a party was not correct, they—the G. M. A. C.—would not accept it, and if it was, they took it and advanced the money, and if they didn't think the party was good they turned the loan down; that witness did not make the loan himself; that the G. M. A. C. turned the loan down if anything was not all right; that he didn't make the loan for them; that he made the loan direct so far as the car was concerned in order to pay the Oldsmobile Company; that plaintiff had the right to turn the application down, made its own investigation, passed upon the security and only furnished him the blanks, which he made out himself in order to get the sale of the car, and sent them up to plaintiff to approve, and this was all he did.

DeRackin, one of Reuter's salesmen and a witness for plaintiff, testified that the regular market price of the new car was $1450.

One of the attorneys for plaintiff testified that he drew the petition and affidavit in replevin and intended to make the affidavit himself as attorney for the plaintiff, but as Mr. Reuter came to the office, witness asked him, on account of his interest in the matter, he being the payee and endorser of the note, to make the affidavit and Reuter did so.  Witness testified he did not understand that Reuter was plaintiff's agent at Sedalia and could not recall why the words ''and as agent for the plaintiff at Sedalia'' happened to be inserted in the affidavit.

The foregoing is a statement, in rather minute detail, of all the facts bearing upon the question whether the debt secured by the chattel mortgage is tainted with usury. If it is, then the chattel mortgage is void under the statute, section 6496, Revised Statutes 1919. In the investigation of a transaction to see whether usury has been exacted, the law intends that the search shall penetrate, through form, device or makeshift, to the very substance. The form in which the agreement is made and the more or less ingenious phrases in which the contract is negotiable, are immaterial. [Krcibohm v. Yancey, 154 Mo. 67, 85; Pope v. Marshall, 78 Ga. 635, 640; Ferguson v. Sutphen, 8 Ill. 547, 567.]

However, it is necessary to clearly keep in mind just what usury is, and what is necessary to constitute it. Usury is the exacting, taking or receiving of a greater rate than is allowed by law, for the use or loan of *money*. In order for a transaction to be usurious there must be in it a *loan* at more than the legal rate of interest, or the exaction of a greater than the legal rate for the *forbearance* of a debt or sum of money due. [Struthers v. Drexel, 122 U. S. 487, 496; Moncure v. Dermott, 13 Peters (U. S.) 345, 356; Const. Finance Corp. v. Powers Furn. Co., 209 Pac. 614, 615.] "In order to constitute usury there must be an express or implied loan. . . . In the absence of a loan there can be no usury. Usury is not predicable of a purchase." [State ex rel. v. Boatmen's Savings Institution, 48 Mo. 189, 193.] In Nichols v. Fearson, 7 Peters (U. S.) 101, 108, it is said: "There are two cardinal rules in the doctrine of usury. . . . The first is that to constitute usury, there must be a loan in contemplation of the parties; and the second that a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction."

It is true, a loan may be cloaked in the outward form and appearance of a purchase, in which case that will not change the substance of the transaction nor hide the usury. But if there is a real and bona-fide purchase,

not made as the occasion or pretext for a loan, the trans-action will not be usurious even though the sale be for an exorbitant price, and a note is taken, at legal rates, for the unpaid purchase money. The reason is that the statute against usury is striking at and forbidding the exaction or receipt of more than a specified legal rate for the *hire of money* and not of anything else; and a purchaser is not like the needy borrower, a victim of a rapacious lender, since he can refrain from the purchase if he does not choose to pay the price asked by the seller. So that a sale in good faith of property, merchandise, or of an indorsement, or guaranty, or even of credit, if the seller has no other interest in the transaction, is valid and not open to the objection of usury whatever the price. [White v. Anderson, 164 Mo. App. 132, 136.] And if the sale be a real and not a pretended transaction, it will not make any difference even though the seller have a cash price and a *larger* price where the sale is on time or credit. If the buyer chooses to purchase *on time* and pay the larger price, the taking of a note for the latter will not constitute usury. [Hogg v. Ruffner, 1 Black (U. S.) 115, 118-120.] This was a case where, upon the dissolution of a partnership, two of the partners were willing to sell to the third for $20,000 cash, but as he did not have that amount of ready money, it was finally agreed that they would sell to him on a ten-year credit basis for $38,000, and he executed his note and deed of trust for that amount. It was held there was no usury, because, to "constitute usury there must be either a loan and a taking of usurious interest, or the taking of more than legal interest for the forbearance of a debt or sum of money due."

In Smith v. Kaufman, 224 S. W. 978, 979, it is said: "On a bona-fide sale of merchandise on a credit at a higher price than the purchaser would have to pay for cash, no charge of usury can be predicated, for the element of lending and borrowing is absent." [See, also, Davidson v. Davis, 52 So. 139; Huber Mfg. Co. v. Ellis, 199 Mo. App. 96; 39 Cyc. 927.]

Of course, the fact that a note is given for the purchase price of an article will not prevent the note from being usurious if the note calls for *more interest than the law allows*. That was the situation in Mitchell v. Griffith, 22 Mo. 515, 517. The note called for ten per cent interest while the law allowed only four. The court remarked that the parties could have "so contracted that usury could not have been predicated on the balance of the consideration money not paid down; but we think that they have failed to do so in this case, and that the note calls upon its face for the interest not allowed by law." And in support of this, the court cited Beete v. Bidgood, 7 Barn. & Cress. 453; where the claimed usurious interest was held to be a part of the *contract price* for the estate purchased and hence was not violative of the law against usury.

It would seem to be undoubtedly clear that so far as Reuter, the dealer, and the defendant are concerned, there was a bona-fide sale of the automobile; and, under the authorities above cited, Reuter had the right to sell the car *on time* for more than the cash price thereof. Since there is no statute declaring the discounting of notes usurious, and they are property which may be bought and sold on such terms as may be agreed upon, however small the price, Reuter had the right to sell the note to plaintiff; and if this is what was done, there was no usury. [27 R. C. L., sec. 16, p. 215; State ex rel. v. Boatmen's Savings Institution, 48 Mo. 189, 193; Priest ·v. Garnett, 191 S. W. 1048; Coleman v. Cole, 158 Mo. 253, 260.]

The mere fact that, prior to the transaction, plaintiff furnished Reuter with blank forms of chattel mortgages and notes together with the rates of discount it would pay, and also forms of statements relative to the sale and solvency of the purchaser and directions how to proceed, certainly does not conclusively show that the transaction was a scheme to enable plaintiff to effect a usurious loan to defendant by having the note and mortgage made to Reuter and then endorsed over to plaintiff by him.

Plaintiff has no interest in the sale of automobiles. The furnishing of the above-mentioned blanks, rates and information could very properly be done merely to facilitate the submission of notes to plaintiff together with the required information relative to the desirability of the same, and thereby expedite the purchase by plaintiff of automobile paper taken by Reuter whenever he made a sale. The further fact that Reuter knew the discount he would have to allow in order to sell the paper to plaintiff, and his addition of only that much to his *cash* price of the automobile, would not necessarily make the transaction a loan from plaintiff to defendant. Desiring to make the sale and knowing that he could sell the note to plaintiff and the discount he would have to make, he could rightfully make the addition of that amount to the *cash* price of the automobile, the total being his *time-*selling price. This would not be usury on his part, since the transaction was a real sale. The defendant was a purchaser of the automobile and not a borrower of money. Hence the law against usury would not apply under those circumstances. The note, by its terms, did not call for usurious rates of interest, and, not being given for a loan but for a purchase, which defendant could have declined if he chose, it clearly was not usurious as between Reuter and defendant, had the former kept the note and not sold it to plaintiff. How then could it become usurious after a sale thereof by him, except, of course, by the exaction of a sum for a *subsequent* forbearance or *extension* of the debt, nothing of which was done in this case.

It is no doubt true that where there is no sale in good faith but a mere loan, the fact that the note is made to one person who, acting as a conduit, immediately endorses it over to a third person who advances the money, such procedure is not sufficient to evade the statute. That was the situation in Wilkie v. Roosevelt, 3 Johns. Cas. (N. Y.) 66, where the note was made to one party who, without paying or receiving anything of value therefor, immediately endorsed it to one Goodrich for the pur-

pose of being discounted at usurious interest. The same principle is involved in Schanz v. Sotscheck, 152 N. Y. Supp. 85; Stober v. Ehrhart, 223 Ill. App. 543; Cho Banking Co. v. Brock, 85 So. 2971. In the case of Quinn v. Van Raalte, 276 Mo. 71, there was a pretended sale of a piece of property at an increased time price, in which it was *not intended that the title should pass,* consequently the court held that it was a transaction to cloak a usurious loan under the form of a sale.

It is urged, however, that the terms of the endorsement are such as not only make Reuter guarantee the note but also rendered him equally liable with the maker and, therefore, the assignment was not a bona-fide sale, but was a loan upon a collateral security of the evidence of debt. This ignores the unquestioned facts that there was a bona-fide sale of the automobile out of which the note grew, and makes the question at issue depend not upon the bona-fide of that sale but upon the good faith of the sale of the note by Reuter to plaintiff. The remarks of Justice JOHNSON in Nichols v. Fearson, 7 Peters 101, l. c. 109, are apt here. He said that:

"A contract free from usurious taint in its inception is not to be invalidated by any subsequent usurious transaction; since, as has been shown, by converting a sale on a discount into a loan on usury, and thus rendering null and void the act of indorsing it, a contract, wholly innocent in its origin, and binding and valid, upon every legal principle, is rendered, at least, valueless, in the hands of the otherwise legal holder; and a party to whom the provisions of the act against usury could never have been intended to extend, would be discharged of a debt which he justly owes to some one.

"Such inconsistencies are not to be lightly incurred; it is enough, to submit to them, when they become unavoidable; but it is easy to assign other and adequate motives for selling a note and then indorsing it, without imputing to the transaction the negotiation of a loan; and it is enough, if the imputation be not unavoidable. The acts against usury were intended to protect the

needy; but the holder of a note may be wealthy, may be the lender, not the borrower of the money, and yet find an adequate motive both for selling a note and guaranteeing it. Suppose, the debtor absconds, or removes to the Arkansas, or the Oregon; the very wealth of the holder may make it no object to follow him, or prosecute a suit against him; his freedom from necessity may be the holder's motive for parting with the note to another at a moderate sacrifice; his indorsing it will diminish that sacrifice; and, although removing, the debtor may be wealthy, and the inducement for the indorsement may be the conviction that the debt is safe—that he will never have to repay what he has received. There could be inferred no treaty for a loan from such a transaction, nor any device to evade the statute. It is a plain contract of bargain and sale, with a warranty of the soundness of the property.''

The cases cited by respondent in support of the contention last above mentioned, to-wit, Home Bond Co. v. McChesney, 239 U. S. 568; Le Seur v. Mfgrs. Furnace Co., 285 Fed. 490, 496; National Discount Co. v. Evans, 272 Fed. 570, 573-4 and In re Grand Union Co., 219 Fed. 353, are not applicable since the sales claimed thereon were mere *shams* and the transactions were really nothing but loans.

Likewise the other cases cited by respondent, to-wit, Bishop v. Exchange Bank, 114 Ga. 962; Darden v. Schuessler, 45 So. 130; Grosvenor v. Flax, etc., Co., 2 N. J. Eq. 453; Rose v. Dixon, 7 Johns. 195; Swanson v. White, 24 Tenn. 373, 376, and Hill v. Maddox, 11 La. Ann. 511, are not applicable to the case at bar, for the main transaction in each of them was a *loan* and the purchases therein were *forced* upon the borrowers at prices above their value as conditions precedent to the loans. Hence the latter were usurious. There is nothing of the kind involved here. We are therefore of the opinion that clearly there is no basis for the view that the note secured by the chattel mortgage in question is conclu-

sively tainted with usury, and hence the trial court could not rightfully tell the jury that it was.

Is the evidence in this particular case such as to enable us to say conclusively that there was no usury, or is it in such shape as to make the question of usury one for the jury to determine, under proper instructions of the court?

Usury is not to be presumed. It must be clearly proved, and the burden of establishing same is on defendant, the one who asserts it.

There is no question but that there was an actual bona-fide sale of the automobile to defendant. He was the purchaser thereof and title passed to him. That was the origin and basis of the transaction. The sale was not a cloak to hide a loan. He was under no compulsion to buy the car and until he did so he was under no obligation to execute the note or give the chattel mortgage. He was a purchaser and not a borrower and consequently was not within the intendment and protection of the usury laws. Reuter was acting in his own individual capacity as a dealer in selling to defendant free from any compulsion or restraint on the part of plaintiff in any way. The plaintiff was not in the transaction making a loan, through Reuter, to defendant. Davis v. General Motors, etc., Corporation, 241 S. W. 44, 46.

It is true Reuter, in one place testified he was plaintiff's agent, but this was merely a conclusion with no facts to substantiate it, and when he gave the facts, they showed he was not acting as such agent. And the other facts relied on are as consistent with a sale of the security obtained by Reuter as otherwise if not more so. The claim that the sale was a sham to cloak a loan from plaintiff to defendant is contrary to the conceded facts in the case and inconsistent with what the parties did; and to say, in the face of the conceded facts, that the transaction was a loan hidden under the cloak of a sale in order to exact usury, would produce the result that "a party to whom the provisions of the act against usury could never

have been intended to extend, would be discharged of a debt which he justly owes to some one."

Since the only claim of invalidity in the chattel mortgage is unfounded, it follows that the judgment should be reversed and the cause remanded with directions to render judgment for plaintiff. It is so ordered. All concur.