J. D. WEBSTER v. STERLING FINANCE COMPANY, Appellant.—No. 39667.
—195 S. W. (2d) 509.

Division One, June 10, 1946.

Rehearing Denied, July 8, 1946.

*Joseph Boxerman* and *Roberts P. Elam* for appellant.

196

*Franklin E. Reagan, Adolph K. Schwartz* and *Sievers & Reagan* for respondent.

BRADLEY, C.—Action for money had and received. Plaintiff obtained judgment for $4723.11 and defendant appealed. Jurisdiction of the appeal is in the supreme court because the constitutional validity of a proviso to a statute [Sec. 3230 R. S. 1939] is involved.

This is the third time for this cause to be in the supreme court. In the first appeal it was held that the appeal was premature and the appeal was dismissed. See Webster v. Sterling Finance Co., 165 S. W. (2d) 688. The second appeal was from an order sustaining a demurrer to the petition and dismissing the cause. Held on the second appeal that the petition stated a cause of action for money had and received. See Webster v. Sterling Finance Co., 351 Mo. 754, 173 S. W. (2d) 928.

The second amended petition, as amended March 27, 1945, by leave and over defendant's objection, after the evidence was all in, is in 12 counts. Each count is based upon facts growing out of a note given by different individuals for equipment sold to them by Octozone Equipment Company, a corporation, hereinafter referred to as Octozone. Count 1 is based on these alleged facts:

August 1, 1938, one Nuckles gave his $1500 note to Octozone, payable in 15 installments of $100 each, beginning October 15, 1938, without interest until maturity. September 1, 1938, Octozone pledged to defendant the first 8 installments to secure a loan of $720. Also, on September 1, 1938, plaintiff alleges Octozone assigned the remaining 7 installments to Leach, Barker, Morse, and Stephan, with notice to defendant, and that on July 2, 1940, Leach et al. assigned the said 7 installments to plaintiff. And plaintiff alleges that defendant "collected said note in full and converted said note to its own use, and even though plaintiff has made demand . . . for said note defendant has refused to deliver same to plaintiff." It is alleged that the 7 installments assigned to plaintiff were of the value of $700, and judgment for $700 is asked in count 1.

Plaintiff also alleges in count 1 that the interest charged and collected by defendant from Octozone for the $720 loan was $80 for a period less than one year, and that such interest was usurious and that. therefore, the *pledge* of the 8 installments to secure the loan

was void under Sec. 3231 R. S. 1939, Mo. R. S. A., Sec. 3231. Octozone is a corporation, and plaintiff's ownership of the last 7 installments of the Nuckles note is derived from Octozone. The proviso in Sec. 3230 R. S. 1939, Mo. R. S. A., Sec. 3230, denies to a corporation the defense of usury to such actions as amended therein. Plaintiff, in the amendment to which defendant objected, alleges that the proviso is unconstitutional [Const. 1875] and void because:

(1) In violation of Sec. 28, Art. 4 (no bill shall contain more than one subject, etc.) ; (2) in violation of paragraph 26 of Sec. 53, Art. 4 (prohibiting passage of special laws granting exclusive rights) ; (3) in violation of paragraph 33 of Sec. 53, Art. 4 (prohibiting passage of a special law by the partial repeal of a general law) ; and (4) in violation of Sec. 1, 14th Amendment—U..S. Constitution (no state shall make or enforce any law denying equal protection of the law). The allegations as to usury in count 1 of the amended petition was applicable to all 12 counts, and were not repeated in counts 2 to 12, inclusive.

The allegations in the remaining 11 counts are similar to those in the first. Each count pertains to a different note. In each count it is alleged that certain first due installments of the particular note were pledged by Octozone to defendant to secure a loan, and that some or all of the remaining installments were assigned to plaintiff, and that defendant collected, etc., as charged in count 1.

Defendant did not refile its answer after the amendment of March 27, 1945, was made. The answer was a general denial and a separate answer to each count of the petition. Defendant alleged that the installments which plaintiff alleged were *pledged* to it by Octozone to secure a loan, were not pledged, but were *sold* to it by Octozone, and that the installments which plaintiff claims were assigned to him were, at the time of the *sale* of the designated installments to defendant by Octozone, *pledged* by Octozone to defendant to secure the payment of the *sold* installments, and also to secure installments of other notes theretofore sold to defendant by Octozone, and other liabilities which Octozone owed defendant. Defendant alleges that at the time of the sale and pledging to it of the installments of the 12 notes mentioned in the 12 counts of the petition, Octozone delivered these notes to defendant, and that whatever sum defendant collected on these notes it applied the proceeds thereof to the payment of the installments sold to it, and the balance on the payment of other notes and installments theretofore sold by Octozone to defendant and on other liabilities owed defendant by Octozone. Defendant alleged that Octozone still owed it $2695 "on notes and installments of notes sold by" Octozone to defendant. Originally plaintiff had pleaded usury in his reply, but that was struck and was the principal subject of controversy on the second appeal.

The trial court found that the specified installments of the 12 notes were not *sold* to defendant, but were *pledged* for loans as plaintiff claims, and that all these loans were tainted with usury, and that the pledges were void under Sec. 3231. The court also held that the proviso to Sec. 3230, denying the defense of usury to a corporation, is unconstitutional and void on the grounds alleged by plaintiff. And the court found that defendant collected installments assigned to plaintiff and aggregating $3790. These were installments of the Nuckles, Vail, Reese, Dougherty, Rastikis, Fleener, and Becker notes, the notes mentioned in counts 1, 3, 4, 6, 9, 10 and 12 of the petition. Interest at 6% was allowed, which brought the total to $4723.11.

On each transaction between Octozone and defendant, and pertaining respectively to the 12 notes mentioned in plaintiff's petition, Octozone, by its president, Augustus Schlessing, signed an instrument which we may term a sale and pledge agreement upon which defendant relies to support its contention that the specified first due installments were *sold* to it and not *pledged*, and that the remaining installments were pledged as defendant contends. These 12 sale and pledge agreements are of the same purport, but deal with notes of different makers, of different date, amount, etc. The agreements were in two parts, and each part signed by Schlessing for Octozone. The agreement pertaining to the Nuckles note is typical and is as follows:

"For and in consideration of the sum of seven hundred twenty ($720.00) dollars, receipt of which is hereby acknowledged, the undersigned, Octozone Equipment Company, a corporation, hereby sells, assigns, transfers and delivers, with recourse, unto Sterling Finance Company, note and installments aggregating $800.00, described as follows, to wit:

"The first eight (8) installments in the amount of $100.00 each, aggregating $800.00 payable on the 15th of each month beginning October 15th, 1938, mentioned and described in note executed by Geo. T. Nuckles, 687 W. Clay, Marshall, Mo., dated August 1st, 1938, in the amount of $1500.00. Said note is secured by chattel mortgage.

"The undersigned does hereby waive demand, presentation for payment, notice of non payment, protest and notice of protest, and consents that extensions of time may be made the maker without notice to or releasing the undersigned.

"Dated at St. Louis, Missouri, this 1st day of September, 1938.

"Octozone Equipment Company,

"By Augustus Schlessing, President.

"To further secure to Sterling Finance Company the payment of the note and installments above described, the undersigned hereby deposits and pledges with Sterling Finance Company the following note and installments:

"Seven (7) installments in the amount of $100.00 each aggregating $700.00, payable on the 15th of each month beginning June 15th,

1939, mentioned and described in note executed by Geo. T. Nuckles, dated August 1st, 1938, in the amount of $1500.00.

"In the event the note and installments hereby sold and assigned as aforesaid and all notes and installments sold and assigned heretofore, are paid as agreed, then the note and installments pledged as further security will be returned to Octozone Equipment Company.

"In the event of non payment of the note and installments hereby sold and assigned, the holder hereof is hereby invested with full authority to use, transfer, sell and convey the notes and installments deposited herewith as further security, with or without notice or demand of any sort. From the proceeds of any sale hereunder there shall be deducted the amount of all expenses, legal or otherwise, in connection therewith, and the balance shall be applied, first in payment of the note hereby sold and assigned, and any other liability of the Octozone Equipment Company, who shall remain liable in the event of any deficiency.

"The undersigned does hereby waive demand, presentation for payment, notice of non payment, protest and notice of protest, and consents that extension of time may be made the maker without notice to or releasing the undersigned.

"Dated at St. Louis, Missouri, this 1st day of September, 1938.

"Octozone Equipment Company,

"By Augustus Schlessing, President."

Plaintiff's assignors, Leach et al., were stockholders in Octozone, and had assisted Octozone financially, and Octozone was their debtor. The 12 sale agreements executed by Octozone and delivered to defendant, along with the notes, were executed in duplicate and Octozone retained a duplicate copy. By a writing on the back of these duplicates, Octozone assigned to Leach et al. whatever remaining interest it had in the 12 notes theretofore delivered to defendant. Plaintiff alleges that the assignment to Leach et al. was on the same day that the respective sale and assignment agreements were executed, and the notes delivered to defendant, and the assignments to Leach et al. are so dated. However, the evidence of Schlessing, Octozone's president, was to the effect that these assignments to Leach et al. were subsequent to the time of the execution of the sale and pledge agreements, and delivery of the notes to defendant. The writing on the back of the duplicates is as follows:

"For value received, including loans to and endorsements for the benefit of the Octozone Company the undersigned (Octozone) hereby assigns the within account to B. K. Leach, H. C. Barker, Matt F. Morse and O. H. Stephan of St. Louis, Mo., subject only to the prior claims of the Sterling Finance Company or its assigns and the undersigned irrevocably constitutes said assignees or their nominee, the attorneys for the undersigned to collect same either in their names or in the name of their nominee or in the name of the undersigned

and to so endorse any notes, checks, drafts or other negotiable instruments payable to the undersigned given in full or partial settlement of said notes or account. The undersigned hereby warrants that its records and books of account have been properly marked to indicate that this account has been assigned to said parties. The debtor is hereby authorized and directed to pay the amount due on this indebtedness to said assignees or their nominee at the office of B. K. Leach, St. Louis, Missouri.''

May 2, 1939, Octozone mailed or delivered to defendant a letter signed by it and pertinent to the assignment to Leach et al. A paragraph in this letter follows:

''The intention of this assignment (to Leach et al.) is that only upon the payment of all indebtedness and obligations due, or to become due from the Octozone Equipment Company to the Sterling Finance Company, and the payment of all the notes and chattel mortgages heretofore or hereafter sold by Octozone Equipment Company to Sterling Finance Company, shall said B. K. Leach, O. H. Stephan, Matt F. Morse and Harry C. Barker, have any right to claim any part of the notes and chattel mortgages in which Octozone Equipment Company may have an interest.''

Between November 10, 1938, and May 18, 1939, defendant got 6 notes from Octozone, obtained, as we understand, in about the same way as the 12 notes were obtained. These 6 notes were by makers different to the makers of the 12 notes, and default had been made in the payment of the 6 notes. The evidence showed that the proceeds of the installments, which plaintiff claims, in the notes mentioned in counts 1, 3, 4, 6, 9, 10, and 12 and found by the court to have been collected by defendant, were by defendant applied on the 6 notes, and still left a balance due defendant.

If the specified installments in the 12 notes were *sold* by Octozone and not *pledged* to secure loans, and the remaining installments were pledged by Octozone for the purposes claimed by defendant, then it will be conceded that plaintiff cannot recover, because, in such situation, there would be no question of usury, and because there is no substantial evidence that defendant did not apply the proceeds of the installments claimed by plaintiff to the payment of the 6 notes mentioned, supra, that is, these proceeds were applied as provided in the sale and pledge agreements executed respectively by plaintiff when the 12 notes were delivered to defendant.

By the express terms of the sale and pledge agreements, the transactions respecting the specified first due installments of the 12 notes were *sales*. Notwithstanding these agreements plaintiff contends that the transactions were not sales, and cannot be held to be sales (1) because revenue stamps required by 26 U. S. C. A., Sec. 1801, were not placed on the notes; (2) because the alleged sales

were ''with recourse'' against Octozone; and (3) because of the attending facts and circumstances.

Sec. 1801, 26 U. S. C. A., deals with bonds, debentures and certificates of indebtedness *issued by corporations,* that is, the section deals with corporate securities. The 12 notes were not *issued* by a corporation. All were obligations of *individuals,* hence Sec. 1801 could have no application. To support the contention that the transactions were not sales because the alleged sales were ''with recourse'' against Octozone, plaintiff relies on Sec. 3053 R. S. 1939, Mo. R. S. A., Sec. 3053. This section provides:

''A qualified endorsement constitutes the endorser a mere assignor of the title of the instrument. It may be made by adding to the endorser's signature the words 'without recourse', or any words of similar import. Such an endorsement does not impair the negotiable character of the instrument.'' This section concerns endorsements *without* recourse, and has no application to the present facts.

Were the transactions as to the alleged sold installments *sales* as defendant contends, or was each sale agreement a mere camouflage to disguise a usurious loan, as plaintiff contends? It is true that ''a loan may be cloaked in the outward form and appearance of a purchase, in which case that will not change the substance of the transaction nor hide the usury. But if there 'is a real and bona fide purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price.'' General Motors Acceptance Corporation v. Weinrich, 218 Mo. App. 68, 262 S. W. 425, 1. c. 428. There is no statute making the sale of notes usurious, however great the discount or however small the price paid. General Motors Acceptance Corporation case, supra [262 S. W. 1. c. 429]; State ex rel. Attorney General v. Boatmen's Savings Institution, 48 Mo. 189; Priest v. Garnett et al. (Mo. App.), 191 S. W. 1048; Coleman et al. v. Cole et al., 158 Mo. 253, 59 S. W. 106; 27 R. C. L., p. 215, Sec. 16; 66 C. J., p. 186, Sec. 83.

Augustus Schlessing was president and general manager of Octozone during the transactions with defendant involved here, and handled for Octozone all the transactions with defendant and here involved, and for Octozone, Schlessing signed the sale agreements which in terms are *sales* and in these same instruments, in separate paragraphs and separately signed by Schlessing, as appears, supra, the installments claimed by plaintiff were pledged to defendant to secure the installments sold and to secure other notes, etc., theretofore similarly obtained by defendant from Octozone, and, as stated, these pledges separately signed by Schlessing were prior to the assignment to Leach et al. And, as stated, the evidence is, and nothing to the contrary, that defendant applied the proceeds of the installments claimed by plaintiff to the payment of the balance due on the 6 notes mentioned, supra, and there is yet a balance due defendant.

George Bromeyer was president of defendant and represented defendant in the transactions with Octozone here involved. He prepared the sale and pledge agreements, etc., which Schlessing signed. Schlessing testified, in effect, that Bromeyer knew that Octozone was going to assign the installments claimed by plaintiff to Leach et al., but the assignments to Leach et al., as appears supra, were subject "to the prior claims" of defendant. And if the prior lawful claims of defendant consumed all the proceeds of the installments collected by defendant and claimed by plaintiff, then there was nothing on these installments assigned to Leach et al. and there was nothing assigned by Leach et al. to plaintiff.

Schlessing testified that in some instances Octozone "had to take back" the note delivered to defendant under the sales and pledge agreement because Bromeyer "didn't consider it good to carry the balance." And Schlessing testified that when Octozone made an assignment to Leach et al., defendant was then notified, but it is quite apparent that Schlessing, as to such notice, was speaking principally from hearsay. Bromeyer said that the first time he heard of the assignments to Leach et al. was in April, 1939. The assignments to Leach et al. cover the period from perhaps shortly after September 1, 1938, to and including some date shortly after February 17, 1939. The assignment to Leach et al. was made on the back of the copies of the sales agreements retained by Octozone when the agreements were executed and the originals, along with the notes, were delivered to defendant. A copy of the assignments to Leach et al. was not on the back of the sales and pledge agreements retained by defendant. However, if defendant was given notice of the assignments to Leach et al., such would not be any evidence that the respective installments were not sold to defendant and the others pledged as defendant claims.

The law will not tolerate any camouflage disguising a usurious transaction to make it seem innocent. "The law looks at the nature and substance of the transaction, and not to the color or form which the parties in their ingenuity have given it. No imaginable act or contrivance to cover up and conceal the usury will avail the parties. They will not be permitted successfully to evade the provisions of the statute by any conceivable scheme or expedient. The courts will follow them through all their shifts and devices, and ascertain the true character and design of the transaction. And if upon such investigation, it appears that there was in substance a loan at an illegal rate of interest, no matter what form or shape the contract has been made to assume, it will be declared to be usurious, and the proper remedy applied." Kreibohm v. Yancey et al., 154 Mo. 67, l. c. 86, 55 S. W. 260. See also, Securities Inv. Co. v. Rottweiler et al. (Mo. App.), 7 S. W. (2d) 484, l. c. 486. No doubt such is the law respecting usury, but there must be substantial evidence that the trans-

204

action and instrument suspected is a camouflage or cloak to conceal the forbidden usury, and unless there is such evidence the charge of usury must fail as would any other issue fail if not supported by substantial evidence. Usury will not be presumed. The burden to establish usury rests upon the party seeking to impeach a transaction on the ground that it is tainted with usury. Missouri Discount Corp. v. Mitchell, 216 Mo. App. 100, 261 S. W. 743, 1. c. 747; C. I. T. Corporation v. Byrnes (Mo. App.), 38 S. W. (2d) 750.

We do not find any substantial evidence in the record tending to show that the transaction stated in the sale agreements were loans and not sales. It is true that witness Schlessing was permitted to testify that these transactions were loans, but manifestly such is a mere conclusion and contrary to the sale agreements executed by him. Also, there is the fact that some or all of the unsold installments in each note were pledged to secure the payment of the alleged sold installments, but we find no case or text that such would be evidence tending to show that the transactions were not sales, as stated in the sale agreements.

As we see it, a ruling that the transactions in question were pledges and not sales would be based upon no more than a suspicion, and a mere suspicion is not sufficient to support a judgment. Leavitt v. Taylor, 163 Mo. 158, 63 S. W. 385; State v. Nagle, 326 Mo. 661, 32 S. W. (2d) 596. In the situation we are constrained to rule that there was no substantial evidence tending to show that the transactions stated in the sale agreements were pledges and not sales. Having reached such conclusion it will not be necessary to rule other questions. The trial court found for plaintiff on counts 1, 3, 4, 6, 9, 10 and 12, and for defendant on counts 2, 5, 7, 8, and 11. The judgment should be reversed and cause remanded with direction to enter judgment also for defendant on said counts 1, 3, 4, 6, 9, 10 and 12. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.