HOLLAND-O'NEAL MILLING COMPANY, Appellant, v. G. T. RAWLINGS, et al., Respondents.*

In the Springfield Court of Appeals, January 26, 1925.

1. **USURY: Details of Transaction Giving Rise to Note Sued on Admissible in Determining Issue of Usury.** In action on note, where defense is that payments exclusive of usury exceed amount due, and defendant counterclaims to recover usury paid, it is proper to admit evidence of details leading up to contract in determining issue of usury.

2. ———: **Includes Exacting Illegal Interest for Forbearance.** Under section 6494, Revised Statutes of 1919, usury includes exacting illegal interest for forbearance of a debt or sum of money due, as well as illegal interest for a loan of money.

3. ———: **Credit Sale Not Usurious, Irrespective of Difference in Cash Price and Credit Price.** The owner of property has a right to name the price at which he is willing to sell, and may offer to sell at a designated price for cash, or at a much higher price on a credit and a credit sale will not constitute usury, however great the difference between the cash price and the credit price, unless the whole transaction is in fact a mere pretense and a sham in order to camouflage the real facts.

4. ———: **Stock Sale on Credit Held Not Usurious, Though Probable Earnings for Credit Period Added to Price.** Where note was given for certain shares of stock at $100 per share, to which was added twenty per cent. to represent probable earnings thereof for following year, at end of which time note was due, unearned part of probable earnings at time of payment being returnable, and whole amount of note bearing eight per cent. interest, transaction *held* not usurious.

*Headnotes 1. Usury, 39, Cyc., p. 1053; 2. Usury, 39 Cyc., p. 926; 3. Usury, 39 Cyc., p. 926; 4. Usury, 39 Cyc., p. 1054.

Appeal from the Circuit Court of Lawrence County.— *Hon. Charles L. Henson*, Judge.

REVERSED AND REMANDED (*with directions*).

*Mann & Mann*, of Springfield, for appellant.

(1) The court erred in admitting oral testimony by the witnesses, Rawlings & Hickman, which varied the terms of the written contract entered into between defendant Rawlings and Frank T. O'Neal, for the reasons: There is no ambiguity in the contract. There is no uncertainty in its provisions authorizing oral testimony in explanation thereof. In the trial of this case plaintiff offered the note sued on and rested its case. Defendants offered the contract of November 1, 1920, in evidence. It was not necessary, in order to make the defense alleged in their answer, or to prove the allegations of their counterclaim, to offer this contract ·in evidence. Their defense, as well as their cause of action, set forth in the counterclaim could have been made as well without the introduction of evidence by them of the contract as with it. When defendants offered this contract in evidence they knew its contents and by offering it in evidence they vouched for the correctness of its provisions; and having vouched therefor will not be permitted to impeach their evidence by oral testimony. We recognize the rule that oral testimony may be offered to impeach the terms

of a written instrument for the purpose of showing usury, but that rule has never been extended to permit a party to the litigation to impeach the written instrument which he himself offers in evidence and vouches for. 10 Ruling Case Law, 1089; Merchants Bank v. Rawls, 7, Ga. 191, 50 Am. Dec. 394; Dunn v. Dunnaker, 87 Mo. 597; Kessner v. Phillips, 189 Mo. 515. (2) If this oral testimony in so far as is impeaches, or varies the terms of the written instrument, offered in evidence and vouched for by defendants, is incompetent and should not have been admitted, then the case is to be tried on the note and the contract, which taken together show a valid transaction which the parties could legally make. There was on the date the note and contracts were executed no existing indebtedness. O'Neal owned certain stock which he was not required to sell. For the seventy-nine shares of stock in question defendant Rawlings, although desiring to purchase, was unable to pay for in cash. The evidence conclusively shows that the note was given at the time the stock was transferred and after the price at $120 per share had been agreed on. No money for this stock changed hands. Rawlings did not receive from O'Neal, or any other person, any money on his note, or pay to O'Neal any money for the stock purchased. He gave his note and got seventy-nine shares of stock. 39 Cyc. 926; 27 Ruling Case Law, page 214; Yarbrough v. Hughes, 139 N. C. 199, 51 S. E. 904. If the transaction is a bona-fide sale it cannot be usurious however unconscionable it may be. 39 Cyc. 926; White v. Anderson, 164 Mo. App. 132, 136; General Motors Acceptance Corp. v. Weinrich, 262 S. W. 425. In order to constitute usury there must have been a loan of money. Usury can grow out of but one transaction, to-wit, one for the use and forbearance of money. Usury is the exacting or charging in excess of the legal rate of interest for the use of money loaned. Huber Mfg. Co. v. Ellis, et al., 199 Mo. App. 96, 201 S. W. 931; White v. Anderson, 164 Mo. App. 132, 135; Machine Co. v. Tomlin, 174 Mo. App.

515; Taylor v. Buzard, 114 Mo. App. 622; Edwards v. Wiley, 235 S. W. 54; Real Estate Trust Co. v. Railway, 77 Atl. 756; Schanz v. Sotscheck, 149 N. Y. Supp. 145; Nantz v. Hurst, 166 Ky. 396, 179 S. W. 400; Heinrich v. Jenkins, 98 Minn. 489, 108 N. W. 877; Flagg v. Fisk, 87 N. Y. Supp. 530; Taylor v. Hintz, 57 N. J. L. 239, 30 Atl. 551. O'Neal had seventy-nine shares of stock which Rawlings desired to purchase. Rawlings says, although it appears by no competent testimony, that O'Neal priced this stock at $100 per share, if paid for in cash, or $120 per share, if paid for by a note due fourteen months after date. In other words, he had a cash price lower than a credit price. The fact that he agreed to return a portion of the purchase price if the note was paid before maturity does not make the transaction any less a sale or impair its validity. The burden to prove that the transaction was a loan of money in which a higher rate of interest than that allowed by law was exacted and that it was a bona-fide sale rests upon the defendants who assert this proposition. Missouri Discount Corporation v. Mitchell, 261 S. W. 743, 747; Yarbrough v. Hughes, 139 N. C. 199, 51 S. E. 904; General Motors Acceptance Corp. v. Heinrich, 262 S. W. 425, 430. If the oral evidence offered by defendants was competent it must be taken as a whole. Mere extracts from this testimony cannot be taken to support defendants' theory. Anderson v. Davis, 251 S. W. 86, 90. The testimony of Rawlings taken as a whole, and the testimony of the witness Hickman taken as a whole, shows this transaction to be just as stated in the written contract, a sale of personal property at a credit price. The vendor could fix this credit price at such sum as he was willing to take for it and so long as he did not exact more than eight percent interest on the credit price the note taken as evidence of the indebtedness is valid. There was no testimony constituting a defense to the note or in support of defendant's counterclaim and the court erred in refusing to direct a judgment for plaintiff on the note sued on and

for the plaintiff and against the defendants on defendants' counterclaim.

*Katherine Halterman,* of Mt. Vernon, and *W. B. Skinner,* of Springfield, for respondent.

(1)   Usury is defined to be the exacting, taking or receiving of a greater rate than is allowed by law for the use or loan of money.   To constitute a transaction usurious it must appear that there is in it a loan at more than the legal rate of interest or the exaction of a greater than the legal rate for the forbearance of a debt or a sum of money due.   R. S. 1919, sec. 6494-5; Struthers v. Drexel, 122 U. S. 496 and 30 Law Ed. 1216; Moncure v. Dermoth, 13 Pet. 345, and 10 Law Ed. 193; General Motors Acc. Corp. v. Weinrich, 262 S. W. 428.   It is not necessary to constitute a loan that there should be in very terms an application to borrow and an agreement to lend.   Every advancement of money for the accommodation of another to be repaid to the person making the advance by the person receiving it, or by any other person for him or by or out of his funds, it literally and legally a loan of money.   Freeman v. Britten, 17 N. J. L. 191, 206; Quinn v. Van Raalte, 276 Mo. 100.   It may be added to the foregoing full and satisfactory definition, that a loan may be said to be the existence of a contract whereby one party transfers to another a sum of money which the other agrees to pay absolutely, together with such additional sums as may be agreed upon, for its use.   Quinn v. Van Raalte, supra, 104.   The term "forbearance" as used in the usury statutes signifies the contractual obligation of the creditor to forbear, during a given period to require of the debtor, payment of an existing debt then due and payable.   When there is an existing and matured debt, a charge made by the creditor for his binding promise to forbear for a definite period to collect it, greater than that allowed by law, will subject the debt forborn to all the penalties prescribed for

usury. If the transaction is in reality an agreement for forbearance, the fact that it takes the form, and the parties agree that it shall be considered an exchange of paper, cannot change its usurious nature. And as a general rule the same principles which apply to usurious loans apply equally to contracts of forbearance, since the courts regard forbearance as equivalent to a loan and will be as quick to detect an intention to evade the usury laws in an agreement to forbear the collection of a debt as in the case of an original loan. 39 Cyc., page 41 (c). It should always be remembered that the statute lays as much stress upon the word "forbearance" as upon the word "loan." And however some of the older cases may be construed it now appears clear that when money is owing on any kind of contract and forbearance is given for such debt upon the condition of receiving more than legal interest as forbearance money, such a forbearance, is as much usury as if the sum of money had been absolutely lent upon a contract to pay more than legal interest. 39 Cyc, page 942, note 56; Comyn on Usury, 156; Adams v. Randolph, 41 N. J. E. 218. When a certain sum of money has become payable under a contract of sale at a cash price, then the taking of notes therefor payable at a future day is a forbearance and if an additional sum greater than legal interest for the extension period is exacted the contract is usurious. 39 Cyc, page 943 (III); Stewart v. Cross, 66 Ala. 22; Irvin v. Mathews, 75 Ga. 739. Whenever a transaction is uncovered in which more profit is secured to the lender than the rate of interest allowed by law for the use or forbearance of money the courts will pronounce it usurious however well it may be disguised and concealed. White v. Anderson, 164 Mo. App. 135; Missouri Real Est. Synd. v. Sims, 179 Mo. 679; Hewitt v. Dernent, 57 Ill. 500. (3) Usury how proved. In the investigation of a transaction to see whether usury has been exacted the law intends that the search shall penetrate through form, device or makeshift to the very substance. The

form in which the agreement is made and the more or less ingenious phrases in which the contract is negotiated or couched are immaterial, and the question of fact, as to whether there has been an exaction of a greater rate of interest for the loan or forbearance of money than the law allows, will be determined from all the circumstances of the particular case. The law looks to the nature and substance of the transaction and not to the color or form which the parties in their ingenuity have given it. Kreibohm v. Yancey, 154 Mo. 85-86; Pope v. Marshall, 78 Ga. 635 and 4 S. E. 116; Ferguson v. Sutphen, 3 Gilman 547; Campion v. Kille, 14 N. J. Eq. 232. On a plea of usury, if the usury does not appear upon the face of the contract, but the same appears valid in form, the borrower may testify as to the existence of usury in the preceding parts of the transaction and that the writing was a device to cover usury. Webb on Usury, Pars. 203-205 and 426-432; Grason v. Books, 64 Miss. 410, 1 So. 482; Ferguson v. Sutphen, supra; Pope v. Marshall, supra; Campbell v. McHarg, 9 Iowa, 354; Jackson v. Jones, 13 Ala. 121; Munford v. McVeigh, 92 Va. 446, 23 S. E. 857; Hewitt v. Dernent, 57 Ill. 500.

BRADLEY, J.—This is a suit to recover the balance alleged to be due on a promissory note. The cause was tried before the court without a jury, and judgment went against plaintiff on the note, and in favor of defendants on a counterclaim. Failing to get a new trial plaintiff appealed.

The petition is in the conventional form. The answer in effect pleads that the payments made, excluding alleged usury, exceeded the amount due, and then follows a counterclaim to recover the alleged usury paid. The reply is a general denial.

The transactions which gave rise to the note in suit were had between defendant G. T. Rawlings and Frank T. O'Neal, but it was agreed that any defense available against Frank T. O'Neal would be available against

plaintiff. Defendant Vivian Rawlings is the wife of G. T. Rawlings. She did not participate in the original transactions, but signed the note sued on. When we use the term defendant herein we have reference to G. T. Rawlings.

Prior to November 1, 1920, Frank T. O'Neal, H. T. Hickman and defendant G. T. Rawlings, owned all of the capital stock of the O'Neal Automobile Company, a corporation, of Mount Vernon, Mo. The capital stock of the O'Neal Automobile Company was $36,000, divided into 360 shares of the par value of $100 each. Of this stock O'Neal owned two hundred eighty-three shares. Hickman fifty-six shares, and defendant twenty-one shares. Some time prior to November 1, 1920, O'Neal moved from Mount Vernon to Springfield. A valuable asset of the O'Neal Automobile Company was the Ford Agency, and the Ford Motor Company had let it be known that the Ford agency could not be held at Mount Vernon except by residents of Mount Vernon. In this situation negotiations were started leading towards the purchase by Hickman and defendant of all of O'Neal's stock in the O'Neal Automobile Company. Finally a deal was consummated whereby Hickman purchased one hundred twenty-nine shares of O'Neal's stock, and defendant purchased one hundred fifty-nine shares of said stock, making one hundred eighty shares each for Hickman and defendant. O'Neal delivered to defendant eighty shares of this stock for which defendant paid him $8,000 in cash. Respecting the remaining seventy-nine shares defendant and O'Neal entered into the following contract:

"THIS AGREEMENT, Made and entered into this 1st day of November, 1920, by and between Frank T. O'Neal of Springfield, Missouri, the first party, and G. T. Rawlings, of Mount Vernon, Missouri, second party.

WITNESSETH, That Whereas, Frank T. O'Neal has in consideration of the sum of $9,480 sold, assigned, transferred, set over and delivered unto the said G. T.

Rawlings seventy-nine shares of the capital stock of the O'Neal Automobile Company, a corporation, organized under the laws of the State of Missouri and having its principal office and place of business in the City of Mount Vernon, in said State. The shares of the said capital stock are sold and transferred by the said O'Neal to the said Rawlings on the following terms and conditions, to-wit: The said G. T. Rawlings has executed and delivered to the said Frank T. O'Neal his promissory note for $9,480 dated November 1, 1920, and due on or before fourteen months after date, with interest at the rate of eight (8%) per cent per annum from date, and to further secure the payment of said note and interest, said Rawlings has delivered to the said O'Neal ninety-five shares of the capital stock of the said O'Neal Automobile Company to be held by the said O'Neal as collateral security.

"The purchase price of said seventy-nine shares of the capital stock is fixed at $7,900 to which has been added twenty per cent, or $1580, making the total consideration of $9,480, and it is understood and agreed that said twenty per cent represents the probable earnings of said seventy-nine shares of stock for the year 1921. If the said Rawlings shall fully pay the said note representing the purchase price of said seventy-nine shares of stock at any time prior to the maturity of the said note, the said O'Neal shall refund or pay the said Rawlings that proportion of said twenty per cent unearned at the date said note is fully paid, and for the purpose of such refund it is agreed that one-twelfth part of said twenty per cent shall represent the amount of the earnings for each calendar month. That is to say, the said O'Neal shall refund to the said Rawlings one-twelfth of said twenty-per cent for each calendar month of the year 1921 remaining after said note has been fully paid.

"In further consideration of said sale the said G. T. Rawlings agrees to make or cause to be made a true and correct inventory of the assets and liabilities of the

said O'Neal Automobile Company on December 31, 1920, for the purpose of determining the earnings of said corporation for the year 1920, and immediately after said inventory has been made, said Rawlings will pay, or cause to be paid to the said O'Neal ten-twelfths of that part of the net earnings of the corporation, to which one hundred fifty-nine shares of the capital stock of said corporation shall be entitled, whether the same is declared as dividends or allowed to remain as surplus or undivided profits; and the said O'Neal shall hold the said ninety-five shares of stock deposited with him as security in payment of said promissory note aforesaid as security to the payment of this last named sum representing that share of the earnings for 1920 aforesaid.

"To the faithful performance of all the terms and conditions of this agreement the parties hereto bind their respective heirs, executors, administrators and assigns.

"IN WITNESS WHEREOF, Parties have hereunto and to duplicate copies hereof set their hands and seals this first day of November, 1920. FRANK T. O'NEAL, First Party. G. T. RAWLINGS, Second Party."

On December 31, 1921, the balance due on the $9,480 note provided for in the contract, according to the tenor of said note, was $6,480, and on that date the note sued on was given to take the place of the original note. Deducting amount paid on note sued on and figuring on the theory that usury was involved the court found for defendant on the counterclaim in the sum of $1,333.34, and allowed $100 additional for attorney's fee.

Prior to November 1, 1920, the O'Neal Automobile Company had never failed to earn annually less than twenty per cent. Plaintiff's contention is that O'Neal was willing to sell his stock for par if cash was paid, but that he was not willing to sell at that price on a credit; that his credit price was par, plus twenty per cent, the minimum amount the O'Neal Automobile Com-

pany had theretofore earned. On this basis the credit price of the seventy-nine shares was $7,900, plus twenty per cent, making $9,480 as stated in the contract. For this amount the original note was given drawing interest from date at eight per cent. Defendant contends that the actual sale price of the stock was $100 per share or $7,900 for the seventy-nine shares, and that the $1580 was added in the face of the note and exacted and demanded by O'Neal for his forbearance in extending credit on the $7,900. Defendant introduced the contract in evidence, and, over plaintiff's objection, was permitted to go into the details leading up to the contract on the theory that it was tainted with usury. It was proper for the court to know the complete history of the transactions between defendant and O'Neal, for how else could the issue of usury be determined. In most usury cases it is found that there was a loan of money, express or implied, but our statute includes the *forbearance* as well as the use of money. [Sec. 6494, R. S. 1919; White v. Anderson, 164 Mo. App. 135, 147 S. W. 1122; General Motors Acceptance Corporation v. Weinrich, 262 S. W. (Mo. Sup.) 425, 428, and cases therein cited.] In the last cited case the court said: "In order for a transaction to be usurious there must be in it a loan at more than the legal rate of interest, or the exaction of a greater amount than the legal rate for the forbearance of a debt or sum of money due."

On direct examination defendant stated that the original note was given "for money to buy stock in an automobile company. Q. From whom did you get the money? A. From Mr. O'Neal." But when conclusions are eliminated defendant says no more than that O'Neal exacted the $1,580 included in the note for the forbearance of a debt. On cross-examination defendant testified as follows: "Q. When was the O'Neal Auto Company incorporated? A. In 1919, I believe. Q. Before that time it was just a partnership between you three? A. In 1919 it was when we bought it. Q. When you bought

it you incorporated the business in the name of the O'Neal Auto Company? A. Yes. Q. You three were the original stockholders of that company? A. Yes. Q. O'Neal was in the Milling business. A. Yes. Q. Devoted all his time to that business? A. Yes. Q. And was not active in the management of the Auto Company? A. Yes, he kept the books up there for quite a while. Q. But you and Mr. Hickman looked after the balance? A. Yes. Q. You were the ones that were on the ground? A. Yes. Q. You were stockholders from that time until when? A. I believe I sold out in May of this year. Q. You sold to Mr. Hickman? A. Yes. Q. Up until this transaction of November 1, 1920, the corporation had never paid less than twenty per cent? A. No. Q. What was the dividend for 1919? A. Twenty-five per cent. Q. How much did you lay aside as a surplus over and above your dividend? A. I don't know just what it was. Q. What was the dividend for 1920? A. Around twenty per cent. Q. At least that much? Something over that? A. I don't think it was. Q. So it never had earned less than twenty per cent? A. Not at that time. Q. When you got ready to buy O'Neal's interest, you didn't have enough money to buy all the stock you wanted to buy? A. No. Q. You paid him as much as you had and gave him your note for the balance? A. Give a note for the balance we owed. Q. That was for seventy-nine shares? A. That was what the note was given for, yes. Q. You bought a total of how many shares? A. One hundred fifty-nine. Q. The rest of the one hundred eighty shares you paid for in cash? A. Yes. Q. Now you say this note was for a loan, that you got the money from Mr. O'Neal? A. It had to be, to get the stock. Q. You didn't get any money from Mr. O'Neal? A. No. Q. You gave your note and he turned over to you one hundred fifty-nine shares of stock? A. He turned over one hundred fifty-nine shares, it was bought all at that time. Q. But eighty of it you paid for? A. Yes. Q. So your note

was given for the balance of seventy-nine shares? A. Yes. Q. That is correct; there was no loan about it? A. To be sure. It had to be a sale or it wouldn't have went with the Ford Company. Q. What you mean by a loan is, that you bought this stock and you couldn't pay for it in cash, so you paid for it with a note due fourteen months after date? A. Yes. Q. That is what you mean by a loan? A. Practically the same. Q. You didn't go out and borrow the money? A, No. Q. You hadn't bought the stock before that and put it back up as collateral? A. I put up collateral right there. Q. But it was stock you got for the note? A. Yes, and some other. Q. That was to secure the dividend for the year 1920, for which you were to pay O'Neal ten-twelfths of? A. I put up all the stock I had. Q. To secure the payment of your note? A. Yes. Q. You were expecting, at the time this note was executed, that the business would continue paying twenty per cent, you had no reason to believe otherwise? A. Yes, I told Hickman I didn't think it would. Q. Did you tell O'Neal that? A. Yes. Q. When you executed this contract you were up in Mr. O'Neal's office? A. Yes. Q. At that time you expressed no other thought than this stock would earn twenty per cent? A. No, but I didn't think it would. Q. You set forth in that agreement that that was the estimated profit for that year? A. They said, suppose we estimate it, I says, suppose you do, how do you know it will make it? Q. That is what you did estimate it there? A. Yes. Q. Mr. O'Neal told you if you would pay for the stock in cash you could have it for $100 a share? A. Yes. Q. But if you bought it on a credit it would have to be more? A. No. Q. That is what you did do? A. Yes, of course we did, yes. Q. You don't mean to have the court understand that you thought Mr. O'Neal was so void of any business sense that he would sell you that stock for par and get eight per cent, and you go ahead and get twenty per cent? A. Mr. O'Neal was awful

anxious to get the money. Q. That was the reason he was willing to sell you the stock at par? A. He said he would like to have some money at twenty per cent or more. Q. There was no market price fixed on this stock, none of it had ever been offered for sale? A. No. Q. The book value of the stock was carried in excess of par at that time? A. No. Q. In view of the fact that you had been paying twenty per cent dividends? A. If you would go back and look at the books —Q. What was the book value at the time of this transaction, the book value of the stock? A. $36,000 was all it was worth and a little more. Q. One thing, you were carrying this Ford contract at a thousand dollars? A. Yes, and was glad to do it. Q. And it was the biggest paying thing in the whole investment? A. Yes. Q. Made more money off that than all the rest of it? A. Yes. Q. And carried it on the books at one thousand dollars, for tax purposes and everything? A. Yes."

The owner of property whether real or personal has a right to name the price at which he is willing to sell. He may offer to sell at a designated price for cash or at a much higher price on a credit, and a credit sale will not constitute usury however great the difference between the cash price and the credit price unless the whole transaction was in fact a mere pretense and a sham in order to camouflage the real facts. [27 Rul. Cas. Law, page 214; White v. Anderson, and General Motors Acceptance Corporation v. Weinrich, supr.] Hickman was a witness for defendant, and gave substantially the same evidence as did defendant. There is nothing substantial in the record before us which tends to show that the transaction whereby defendant purchased the seventy-nine shares of stock and gave his note therefor was tainted with usury. We think, considering the evidence of Hickman, and defendant, together with the contract, that the conclusion is inevitable that defendant purchased the seventy-nine shares of stock, and agreed in good faith to

pay $120 per share therefor. According to the previous earnings of the O'Neal Automobile Company its stock on November 1, 1920, when defendant purchased, was worth at least $120 per share. The mere fact that O'Neal was willing to sell for par if he got cash cannot alter the situation. O'Neal had the right, as we have shown, to fix a cash price and a credit price, and not be guilty of usury in the credit transaction if such transaction was on the level and not concocted to indirectly exact tribute for the extension of credit.

The judgment should be reversed and cause remanded with directions to enter judgment in favor of the plaintiff according to the prayer of its petition and in favor of plaintiff on defendants' counterclaim, and it is so ordered. *Cox, P. J.,* concurs; *Bailey, J.,* not sitting.