**G. Bernadette WIGGINS, Administratrix of the Estate of Ursa C. Weston, Deceased, Respondent,**

v.

**Jack T. WESTON, Appellant.**

**No. 48010.**

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Don Chapman, Chapman & Chapman, Chillicothe, for appellant.

Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for respondent.

BARRETT, Commissioner.

In this action on an account stated, tried before the court without a jury, G. Bernadette Wiggins, administratrix of her father's estate, has been awarded a judgment of $7,000 principal sum and more than $500 interest against her brother, Jack T. Weston. Upon this appeal it is urged that, while the evidence "might show an indebtedness by the defendant to his father's estate," there is no evidence of an accounting between the administratrix and the defendant. It is said that there is no testimony that the plaintiff and the defendant "agreed as to a balance due" and that there is no evidence that the defendant promised to pay the plaintiff. The appellant points to several pieces of evidence and says that the evidence may show an indebtedness from him to his father but insists that it does not "show any agreement" between the parties' and, therefore, this court is invited to make its own findings as to the facts and the weight of the evidence and for the reasons indicated reverse the judgment.

Dr. Ursa C. Weston died December 24, 1957. He was survived by seven children including Bernadette, the administratrix plaintiff, and Jack, the defendant in this action. Bernadette had worked in her father's office the eight years preceding his death. She testified that two or three months before her father's death she was present when "Jack got the last 500 that made it 7,000." She was in the adjoining room and heard the conversation, Jack borrowed $500 and "Dad said, 'This makes $6,500,' * * * and Jack said, 'No, that makes it 7,000.'" Immediately the doctor made this memorandum on one of his prescription blanks, "Jack owes me 11–8–57–7000.00  Max Paul owes 11–8–57–1000."

He showed the memorandum to Bernadette and placed it in his office safe. The evening of the funeral the brothers and sisters and some of their wives and husbands met in the doctor's office "to find if he had left a will." When the safe was opened there was the doctor's memorandum, Jack took it and asked Max Paul whether he owed his father and upon Max Paul's admission that he owed $1,000, "Jack acknowledged," with reference to the memorandum, " 'I owe that, I will pay it, don't worry about this, I will pay it.' " His brothers, sisters and in-laws testified that on other occasions Jack acknowledged the indebtedness of $7,000, that he never claimed it as a gift and that he often promised to pay the entire sum or $1,000 to each brother and sister.

On Monday, December 30, 1957, the brothers and sisters met at the office of the probate judge, the estate was opened and Bernadette was appointed administratrix. Thereafter they all met in the corridor "Right outside of the Probate Judge's office" and Bernadette says, "Jack assured us that we didn't have to worry about what he owed." "By Mr. Chapman: Jack assured who? A. All of us that were present, 'that we didn't have to worry about what he owed, that he knew he owed that $7000,' and I said, 'I do too, because I was right there when you got it.' Q. Did you agree to it? A. I agreed to it." Again, in testifying to this particular conversation, Bernadette said, "Jack said he owed it. I agreed that he did. He said, 'That's exactly right,' and I said he did, I knew he did." Subsequently she asked Jack for the money and he said that he would bring it the next time he came over, but when he came he said he had been thinking "and he didn't think he owed but 5,000, he would pay the 5,000 and leave himself out of it." In testifying Jack denied that he owed his father $7,000, he admitted, however, that he had borrowed

money from his father in 1954. He said that he wanted to give his father a note "for this money he had gave me" but his father said, " 'I am giving it to you, no strings attached.' "

In addition to the corroborating circumstances testified to by the brothers and sisters the probate judge said that, "about the time the estate was opened," he had a conversation with Jack and "He said he owed his father $7,000.00." But about six months later Jack came back to see the judge "and asked me if I remembered our conversation, and I told him I did." Jack wanted to know "if he didn't say that this money, they were claiming to be due, was a gift from his Father" but, says the judge, "I told him he didn't."

It is not necessary to further detail the evidence, neither is it necessary to demonstrate by illustration from the evidence and the cases [1] that the proof meets all the requirements of an account stated. Siegel v. Ellis, Mo., 288 S.W.2d 932; Reeves-Wiedeman Co. v. Hays, Mo.App., 311 S.W.2d 68; Alexander v. Scott, 150 Mo.App. 213, 129 S.W. 991. "It is not essential that an account shall be stated in a particular form" (2 Restatement, Contracts, p. 795; Conkling v. Henry Quellmalz Lumber & Mfg. Co., Mo.App., 20 S.W.2d 564, 566), and, of course, an administratrix may state an account concerning money due her decedent. 1 C.J.S. Account Stated § 8, p. 697. Long ago, in Cunningham, Adm'r v. Sublette, 4 Mo. 224, 226, the court said, "Smith's (a partner's) admission to one witness, that the firm owed the intestate $1,100, is, in our opinion, such as ought to have been left to a jury, and if they believed the witness, it would be sufficient to justify them in finding for the plaintiff, on the count for an account stated with the intestate in his lifetime, * * *." "The bare naming of the amount due, if

---

1. Nor is it necessary to buttress this opinion with a long list of cases setting forth the elements of an account stated, the Missouri cases are listed in the following texts and annotations: 1 C.J.S. Account Stated §§ 1–66, pp. 693–756; 1 Am.Jur., Secs. 16–41, pp. 272–292; annotations 6 A.L.R.2d 113; 84 A.L.R. 114; 11 A.L.R. 586.

accepted, may constitute an account stated" (Locke v. Woodman, Mo.App., 225 S.W. 352, 356; annotation 84 A.L.R. 114), and once the original debt is acknowledged "a new cause of action known as an account stated arises between the parties." Gerstner v. Lithocraft Studios, Mo.App., 258 S.W.2d 250, 253.

There is no claim of fraud or of mistake and upon this record this court could not find the facts other than the trial court has found them (Sup.Ct.Rules 73.01(d), 83.13 (c), V.A.M.R.) accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.