**Frank WYATT and Ella M. Wyatt, Appellants,**

v.

**COMMERCIAL CREDIT CORPORATION, a Corporation, Reinhart-Welch, Inc., a Corporation, William Reinhart, an Individual, John W. Welch, an Individual, and Reinhart-Welch Sales Company, a Partnership, Respondents.**

No. 23219.

Kansas City Court of Appeals.

Missouri.

Dec. 5, 1960.

Fred A. Lambert, Jr., Lambert & Patterson, Columbia, for appellants.

Byron E. Mintonye, Kansas City, Lawrence Barnett, Sedalia, for respondents.

HUNTER, Presiding Judge.

This is a suit in equity by plaintiffs-appellants, Frank Wyatt, hereinafter referred to as plaintiff, and his wife Ella Wyatt, against defendants-respondents, Commercial Credit Corporation, Reinhart-Welch, Inc., a corporation; William Reinhart and John W. Welch, individuals, and Reinhart-Welch Sales Company, a partnership in which plaintiffs seek to cause Commercial Credit Corporation to accept a tendered check for $4,875.19 as full payment for a certain recorded note and chattel mortgage, for their cancellation and release and for attorneys' fees and costs. Defendant Commercial Credit Corporation counterclaimed in the sum of $6,674.57.

As will be detailed, the case arose from a dispute over the amount to be paid by plaintiffs to Commercial Credit Corporation to discharge an obligation which plaintiffs assert involved usury and which defendants contend was a lawful time sale transaction.

Since this is the appeal of an equity case our duty is to review the record de novo, giving due deference to the trial chancellor's findings, particularly where the testimony is close and conflicting as he saw and heard the witnesses, and to affirm the judgment below or enter or direct such judgment as justice requires.

Most of the salient facts are undisputed. Appellants are the owners of two grocery stores located in Columbia, Missouri. Respondents William Reinhart and John W. Welch operated as Reinhart-Welch Sales Company, a co-partnership, until succeeded by Reinhart-Welch, Inc., a corporation. For convenience they will be referred to hereafter as "Reinhart-Welch". Reinhart-Welch is located in Sedalia, Missouri, and is engaged in the sale of commercial refrigeration, store fixtures, hardware and related items. Commercial Credit Corporation is engaged in the business of buying commercial paper resulting from the financing of the sales of automobiles and equipment of various kinds. Plaintiffs tacitly concede that Frank Wyatt represented his wife in the questioned transaction and that she is bound by his actions.

Plaintiff was contemplating opening a new grocery store in Columbia, Missouri, and was contacted by Robert C. Jones, a salesman for Reinhart-Welch, who, with the aid of William Reinhart, negotiated with plaintiff on the sale of certain fixtures for the new store. The sales price of the fixtures was $24,422.56. On August 9, 1956, plaintiff signed a purchase order for this equipment, which Mr. Jones also signed on behalf of Reinhart-Welch. The price shown on this purchase order was the cash price for the equipment. During the negotiations there was no mention made about a time-payment price, for at that time plaintiff intended to borrow the money from his local bank located in Columbia, Missouri, and to pay cash for the equipment.

Plaintiff contacted his bank sometime between August 9, 1956, and October 29, 1956, to obtain the required purchase money and was advised by his banker that a loan of the desired size might interfere with his future credit with the bank. Plaintiff abandoned this plan of borrowing from the bank. In the meantime, the equipment was being received and installed. According to plaintiff's testimony, he decided to finance it through some other source. However, no further discussion occurred between plaintiff and Reinhart until shortly before October 29, 1956, when they talked about the situation. According to plaintiff's testimony, he told Reinhart that "if he could get it at comparable bank rates that I would let him finance it for me." One or the other mentioned the possibility of using

Commercial Credit Corporation. Plaintiff told Reinhart he was going to ask him to arrange some financing at six per cent interest and Reinhart said "yes". At Reinhart's request plaintiff gave Reinhart a financial statement. Reinhart showed this statement to Commercial Credit Corporation, with whom he, Reinhart, had done business for years, and was advised by that company that it would purchase the contemplated paper and the terms which the instrument should contain. Plaintiff was then advised by Reinhart that "it had been arranged" with Commercial Credit Corporation. A representative of Commercial Credit Corporation contacted plaintiff and requested him to obtain an agreement from his landlord to waive plaintiff's rent in favor of the Commercial Credit Corporation if plaintiff was unable to make his payments for the fixtures. Plaintiff refused this request.

The details of drawing up the papers were handled by Mr. Lester Cramer, office credit manager of Reinhart-Welch Sales Company, who customarily made up that company's chattel mortgages. There was in the office a chart made up by almost all the finance companies, including Commercial Credit Corporation, showing a series of percentage rates and the amount to be added to the cash price to result in a certain percent. Cramer prepared from the work sheet of the Wyatt transaction the industrial chattel mortgage in question. The work sheet contained a list of the equipment being sold to plaintiff, the sale price, costs of installation and freight, amount of sales tax, insurance, trade-in allowance, down payment of cash, and time difference. This information and figures were transposed on the industrial mortgage form furnished by Commercial Credit Corporation. This chattel mortgage form was taken to Columbia, Missouri, by Mr. Reinhart where plaintiff was contacted. Accompanying Reinhart was an unnamed representative of Commercial Credit Corporation whose sole activity was to check the equipment against the description in the chattel mortgage to see if it was properly

described and listed. No other representative of Commercial Credit Corporation had any contact whatever with plaintiff until after the execution of the mortgage.

The mortgage was dated October 29, 1956. Except for a portion of the "assignment" on the back it was composed of one sheet. At the top is a blocked-in space which stated: "Record of Transaction".

"1. Total Cash Price $24,422.56
2. Cash on or before delivery $2,000.00
   Allowance on property traded in 3,910.00
   Type     Make     Model
   Total Down Payment 5,910.00
3. Unpaid Balance of Cash Price 18,512.56
4. Finance and Recording Charges 3,332.26
5. Time Balance due Seller 21,844.82

Items not stated herein are shown in Chattel Mortgage.

*The Time Price of the Chattels is the sum of Total Down Payment (2) and Time Balance.*" (Italics ours.)

In the body of the chattel mortgage appeared a list of articles sold, numbers and cash price of each. Frank Wyatt appeared as purchaser and Reinhart-Welch Sales Company as seller. In a block at the right-hand side appears *"Time Price $27,754.82."* Beneath that appears "Total Down Payment $5,910.00." Beneath that appears "Time Balance $21,844.22," which is the same figure which appears as Item 5, "Time Balance due Seller", in the "Record of Transaction" above. Below the description of articles appear the following: "After thorough examination, I hereby buy from you at the *Time Price stated herein,* and on the following terms and conditions," etc. It further provides: "I will pay to your order at the office of the Commercial Credit Corporation, 1020 East 63rd Street, Kansas City, Missouri, the Time Balance shown herein in 36 monthly installments of $606.81 each * * * until Time Balance is paid in full." The instrument further contained language to the effect that the signers represent that they read both sides of the chattel mortgage, that it was completely filled in at time of signing, and acknowl-

edged receipt of a true executed copy. (All italics ours.)

The chattel mortgage was exhibited to plaintiff, who read it, checked the information and figures on it, checked the box designated "Record of Transaction" to see if he got credit for his down payment; went over an adding machine tape to see if the figures and totals were correct; checked the payments per month and number of monthly payments, and knew that there were 36 payments at $606.81 per month; noted that the finance charge was $3,332.26, and otherwise examined the chattel mortgage. He and his wife then signed it. Plaintiff testified he didn't know whether or not Reinhart intended to sell the mortgage to Commercial Credit Corporation but "did know it is done sometimes".

A few days after signing the chattel mortgage plaintiff received from Commercial Credit Corporation a book of 36 coupons covering his payments. He made 25 monthly payments of $606.81 to Commercial Credit Corporation prior to the bringing of this action. Wishing to consolidate and refinance some of his obligations he inquired of Commercial Credit Company the amount required to liquidate the entire obligation if paid at the time the 26th installment was due and was advised it would be $6,674.57. According to his testimony a business acquaintance of his then had occasion to examine a copy of the instrument and told him that he was paying interest above the legal rate. He consulted his attorney, who, after study, advised him the pay-off balance at the time of the 26th installment should be $4,875.19 if calculated by applying interest at the rate of 6% per annum to a declining unpaid principal balance. This amount, $4,875.19, was tendered to Commercial Credit Corporation which refused it.

At the trial all counsel stipulated that in the event the issues are found to be in favor of respondents the correct amount of the "pay-off" balance is $6,674.57 but that if the issues are found for the appellants the correct amount is $4,875.19. The trial court found for respondents and entered its decree on their counterclaim for the sum of $6,674.57 and costs.

■ Respondents have moved to dismiss this appeal for the failure of appellants to comply with Supreme Court Rule 83.05(e), V.A.M.R. To a considerable degree appellants in their brief have made mere abstract statements as points relied on. This resulted in a failure to comply with Rule 83.05 (e). However, it is reasonably clear that appellants are charging that the trial court erred in failing to find and declare the mentioned transaction usurious and thus erred in finding for respondents on their counterclaim instead of for appellants on their petition. In the exercise of our discretion under the rule we overrule the motion to dismiss.

The usury statute governing this transaction provides a maximum rate of 8%. It provides in part: "No person shall directly or indirectly take, for the use or loan of money or other commodity, above the rates of interest specified * * * for the forbearance or use of (money) * * *." It further provides that such excess interest is recoverable with costs and attorney fees. Section 408.050 RSMo 1949, V.A.M.S. An accepted definition is that usury is the exacting, taking, or receiving of a greater rate of interest than is allowed by law for the use or loan of money. Anderson v. Curls, Mo.App., 309 S.W.2d 692. Hence the real inquiry is whether there has been a borrowing and lending and, if so, whether it was at a greater rate of interest than the statute allows. This becomes a question of fact to be determined from all of the circumstances of the case. Usury is not to be presumed. It must be proved and the burden of proving it is on the plaintiffs-appellants as the ones who assert it.

Witness Cramer testified he prepared the worksheet which shows "Time difference $3,332.26" by multiplying the unpaid cash balance of the cash price of the equipment times six per cent times three years. In so doing he did not consider that there would

be a declining balance owed as each payment is received. Admittedly, if the questioned transaction is viewed as a loan of money this would result in an interest rate charged of 11.7% per annum which would be in excess of that permitted by the statute. However, if the transaction is not a lending of money but is a bona fide sale of merchandise at a time payment price usury cannot arise for the transaction is not within the scope of the usury statute which concerns itself with loan rates and not sales prices.

In General Motors Acceptance Corp. v. Weinrich, 218 Mo.App. 68, 262 S.W. 425, 428, it was expressed, "It is true, a loan may be cloaked in the outward form and appearance of a purchase, in which case that will not change the substance of the transaction nor hide the usury. But if there is a real and bona fide purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price, and a note is taken, at legal rates, for the unpaid purchase money. The reason is that the statute against usury is striking at and forbidding the exaction or receipt of more than a specified legal rate for the hire of money and not of anything else; and a purchaser is not like the needy borrower, a victim of a rapacious lender, since he can refrain from the purchase if he does not choose to pay the price asked by the seller. So that a sale in good faith of property, merchandise, or of an indorsement, or guaranty, or even of credit, if the seller has no other interest in the transaction, is valid and not open to the objection of usury whatever the price. (Citations.) And if the sale be a real and not a pretended transaction, it will not make any difference even though the seller have a cash price and a larger price where the sale is on time or credit. If the buyer chooses to purchase on time and pay the larger price, the taking of a note for the latter will not constitute usury." To the same effect, see Personal Finance Company of St. Louis v. Endicott, Mo.App., 238 S.W.2d 51; General Contract Purchase Corporation v. Propst, Mo.App., 239 S.W.2d 563, 566;

Holland-O'Neal Milling Co. v. Rawlings, 217 Mo.App. 466, 268 S.W. 683, 686.

Was the questioned transaction a bona fide sale at a time-payment price or was it a ruse or device concocted to circumvent the usury statute by garbing a loan in the cloak of a sale?

The trial court found that on August 9, 1956, plaintiff intended to pay cash but shortly thereafter for personal reasons abandoned the cash-payment idea and decided to buy on time; that plaintiff is an intelligent business man of many years of experience and voluntarily and with full knowledge that the questioned instrument was a time sale contract signed it as such; that the instrument was not to camouflage a loan by Reinhart-Welch, who were not loaning him money but was executed to pay Reinhart-Welch for the equipment they sold him almost three months previously and which had already been installed; that plaintiff chose to purchase on time and pay the larger price and that the taking of the chattel mortgage for the latter did not constitute usury.

■ As a result of our own independent review of the record we have reached the same conclusion. That there was a bona fide sale cannot be questioned. Plaintiff wished to purchase from Reinhart-Welch and did purchase from them the mentioned fixtures which were installed in his place of business. This purchase did not result by the signing of the cash price order. At most that act resulted in an executory contract to sell, with title to the fixtures remaining in Reinhart-Welch. See, Martin v. John Clay & Co., Mo.App., 167 S.W.2d 407. Thereafter, plaintiff with his sellers' consent abandoned that transaction and executed the chattel mortgage providing for the purchase on a time payment basis. While possibly plaintiff may have once thought the arrangement Reinhart-Welch was undertaking to make with Commercial Credit Corporation would be a loan to him of the purchase money by Commercial Credit Corporation so that he could use the money to

purchase at the cash price, he could not have remained under that misconception of the transaction after receiving and reading the chattel mortgage which showed plainly that the transaction was a time sale by Reinhart-Welch to plaintiff for a time sale price.

The fact that prior to the time that the time sale transaction was consummated Commercial Credit Corporation was contacted by Reinhart-Welch to see if and on what terms Commercial Credit Corporation would be willing to buy the contemplated time sale paper from Reinhart-Welch does not change the basic nature of the transaction between Reinhart-Welch and plaintiffs.

Commercial Credit Corporation was not in the business of selling fixtures. It was in the business of buying negotiable paper at discount rates. The fact that it furnished sellers of negotiable paper, including Reinhart-Welch, with blank forms of chattel mortgages or notes, together with the rates of discount it would pay in and of itself is not persuasive that the transaction was a mere scheme to enable defendants to effect a usurious loan to plaintiffs by having the paper made to Reinhart-Welch and then endorsed over to Commercial Credit Corporation. The furnishing by Commercial Credit Corporation of the mentioned forms, rates and information, and its request for data about plaintiffs' credit position could very properly be done to facilitate the submission of notes to it with data relative to the soundness of same, and thereby expedite proper consideration and purchase by Commercial Credit Corporation of negotiable paper taken by Reinhart-Welch whenever it made a sale. Cf. General Motors Acceptance Corp. v. Weinrich, supra.

The fact that plaintiffs were offered goods at a cash price which they declined and at a higher time price which they accepted and that the difference between the two prices resulted in a percentage figure in excess of 6% is immaterial in view of the established law that there may be a cash price for property and a higher price for it where payments therefor are to be made in installments. As stated in General Contract Purchase Corporation v. Propst, supra, 239 S. W.2d loc. cit. 567, "The owner of property, whether real or personal, has a right to name the price at which he is willing to sell. He may offer to sell at a designated price for cash, or at a much higher price on a credit, and a credit sale will not constitute usury, however great the difference between the cash price and the credit price, unless the whole transaction was in fact a mere pretense and a sham in order to camouflage the real facts."

There is no proof that the sale was not in good faith or that the transaction was to establish a loan to be concealed by the pretext of making a note to one person, who, acting merely as a conduit, immediately endorses it over to a third person, who advances the money.

Plaintiffs would have us decide this case contrary to such decisions as General Motors Acceptance Corp. v. Weinrich, supra; General Contracting Purchase Corp. v. Propst, supra; Personal Finance Co. v. Endicott, supra, and Holland-O'Neal Milling Co. v. Rawlings, supra, by adopting what they term to be the "modern view" which would result in the facts before us being treated as within the usury statute. As examples of application of the "modern view" they cite such cases as Jackson v. Commercial Credit Corp., 90 Ga.App. 352, 83 S.E.2d 76; Sloan v. Sears, Roebuck & Co., 228 Ark. 464, 308 S.W.2d 802, and Seebold v. Eustermann, 216 Minn. 566, 13 N.W. 2d 739, 152 A.L.R. 585. An interesting statement of some of the various considerations involved in the so-called "modern view" and "traditional view" is contained in a comment in 24 Mo.L.Rev., pp. 225–40. Respondents assert our legislature recently in Senate Bills Nos. 97 and 98, 70th General Assembly, considered and failed to pass time sales regulatory legislation and that the courts should not disturb the existing law by a decision legislative in nature. It is our view that we have correctly ruled the instant case under the existing statute; that

in so doing we have followed all of the previous Missouri Appellate Court decisions on the subject; and that if a change such as appellants contend for is to be made it should properly come from the legislature.

For the reasons stated the judgment of the trial court is affirmed.

All concur.