RICE'S FEED SERVICE, INC.,
Plaintiff–Respondent,

v.

Mark DODSON and Stephen L. Dodson, as personal representatives of the Estate of William Lacy Dodson, Deceased, and Dorothy G. Dodson, Defendants–Appellants.

No. 19643.

Missouri Court of Appeals,
Southern District,
Division One.

June 30, 1995.

Motion for Rehearing or Transfer
Denied July 24, 1995.

Application to Transfer Denied
Sept. 19, 1995.

J. Gregory Powell, Thomas L. Williams, Roberts, Fleischaker, Williams & Powell, Joplin, for appellants.

George D. Nichols, Nichols, Curless & Nichols, Lamar, for respondent.

FLANIGAN, Judge.

Plaintiff Rice's Feed Service, Inc. brought this action against defendants Dorothy Dodson and the two personal representatives of the estate of William Lacy Dodson, who died April 7, 1993. The trial witnesses referred to decedent as "Lacy," and this opinion will do the same. Lacy and Dorothy Dodson, at all material times, were engaged in the cattle business as a general partnership.

The petition was in two counts. Count I sought recovery for the unpaid purchase price of cattle feed sold by plaintiff to the partnership. The sales took place over a period beginning January 14, 1992, and ending March 30, 1993. Count II incorporated most of the allegations of Count I, and fur-

ther alleged: on March 9, 1993, an account was stated between plaintiff and the partnership, and it was agreed that there was due from the partnership to plaintiff, on February 28, 1993, a balance of $203,957.33, which the partnership promised to pay; the partnership paid $16,251.30, leaving a balance as of March 9, 1993, of $187,706.03. Each count sought recovery of the unpaid amounts, plus interest.

Defendants filed an answer and a counterclaim. The answer, in addition to containing denials, alleged: during the period set forth in the petition defendants paid plaintiff $277,-074.68, and "said account has either been fully or partially paid"; plaintiff has unlawfully charged interest in violation of § 408.060,[1] and defendants have not agreed to the assessment of the interest charges.

The counterclaim alleged: between January 1982 and April 1993, "defendants" purchased feed from plaintiff and paid over $2,100,000 on an open account; plaintiff deducted from the payments "interest payments from the balance due on the said account each month at the rate of 1.5 percent per annum (sic) during the term of the account," in violation of § 408.020 and § 408.030.

The counterclaim prayed that the court enter judgment for plaintiff for the sum due, or for defendants for the sum overpaid, and that the court enter judgment for defendants for double the amount paid as usury, together with reasonable attorneys' fees.

Following a nonjury trial, the trial court found the issues in favor of plaintiff and against defendants, and awarded plaintiff judgment against defendants on Count I in the sum of $17,912.02, together with interest at 18 percent per annum from and after April 30, 1993. The award on Count I was based on unpaid invoices for sales from February 28, 1993, to March 30, 1993. On Count II, plaintiff was awarded the sum of $187,706.03 against defendants, together with interest at 18 percent per annum from and after March 9, 1993. Defendants were denied relief on their counterclaim. Defendants appeal.

In their first two points, which will be considered together, defendants contend: the judgment on Count II was improper because plaintiff did not establish an account stated; even if the evidence was sufficient to show an account stated, the evidence did not "bar proof of usury"; there was no proof of a written agreement justifying the award of 18 percent interest on either Count I or Count II; defendants were entitled to relief on their counterclaim for usury, and the trial court erred in ruling otherwise, "in that usury was established because plaintiff charged and received more than 9 percent interest on an account where there was no written agreement and the account was not a business loan"; and defendants "did not waive their claim for usury" and "in any event the payment of usurious interest was not voluntary."

◼ This court reviews this nonjury case on both the law and the evidence as in suits of an equitable nature and gives due regard to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01(c). The judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). "Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Id.* [2].

For the reasons which follow, this court rejects defendants' first two points. This court holds that the evidence was sufficient to support the award on Count II on the basis of an account stated, and to support the award on Count I on the basis of unpaid invoices for sales taking place after the account was stated, and that the transactions between the parties, the sale of cattle feed for a time sale price higher than a cash price, were not subject to the usury statutes.

**1.** All references to statutes are to RSMo 1994, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Count II of the petition was based upon the theory of account stated.

"[A]n account stated is an agreement between parties, having had previous financial transactions, that a balance struck is correct and due between them, and a promise by the debtor, either express or implied, to pay the balance. It is a new cause of action arising from the prior monetary transactions, and amounts to an admission of liability by the debtor. If the debtor makes no express promise to pay, the retention of the account rendered for a reasonable time without objection admits to the account and implies a promise to pay. The circumstances of a particular case determine the reasonable period of time that an account may be retained without objection."

*Ozark Mountain Timber Products, Inc. v. Redus,* 725 S.W.2d 640, 648[5, 6] (Mo.App. 1987) (citations omitted).

"[A]n account stated need not settle all the dealings between the parties and becomes an account stated only as to the items contained therein and agreed on. . . ." *Hall v. Knapp,* 552 S.W.2d 299, 301[1] (Mo.App.1977).

"[O]f course, an administratrix may state an account concerning money due her decedent. 1 C.J.S. Account Stated § 8, p. 697. Long ago, in *Cunningham, Adm'r v. Sublette,* 4 Mo. 224, 226, the court said, 'Smith's (a partner's) admission to one witness, that the firm owed the intestate $1,100, is, in our opinion, such as ought to have been left to a jury, and if they believed the witness, it would be sufficient to justify them in finding for the plaintiff, on the count for an account stated with the intestate in his lifetime, * * *.' "

*Wiggins v. Weston,* 339 S.W.2d 781, 782[1–3] (Mo.1960). See also *Cady v. Kyle,* 47 Mo. 346 (1871); 1A C.J.S. Account Stated § 3c, p. 72.

"An account stated need not be evidenced or proved by a writing. *Alexander v. Scott,* 150 Mo.App. 213, 222, 129 S.W. 991, 994 [1910]; *Bloss v. Aurora Milling Co.,* 207 Mo.App. 402, 229 S.W. 833, 835[3] [1921]; 1 Am.Jur., Accounts and Account-ing, § 21, p. 276; *Gerstner v. Lithocraft Studios, Inc.,* Mo.App., 258 S.W.2d 250, 253[1] [1953]."

*Siegel v. Ellis,* 288 S.W.2d 932, 938[7] (Mo. 1956). See also MAI 26.04 (1981 Revision); 1A C.J.S. Account Stated § 11.

The trial court made findings of fact, supported by the record, which included the matters set forth in the following fourteen paragraphs:

Lacy died April 7, 1993. Prior to his death, Lacy and Dorothy Dodson were engaged in business as a general partnership. The partnership began purchasing feed from plaintiff in 1981 and continued to do so until after Lacy's death.[2]

In early 1984, plaintiff mailed to the partnership a letter, Exhibit 4, setting forth the terms of payment for credit accounts, including service charges at the rate of 1½ percent per month on delinquent accounts, to which no objection was ever made by the partnership or defendants. There was no evidence the partnership did not receive the letter.

Lacy at all relevant times acted as the agent of the partnership. Prior to Lacy's death, plaintiff, at Lacy's instance, delivered to the partnership quantities of feed and merchandise of the value and for the prices as shown on plaintiff's Exhibit 1, which consists of 415 invoices. The prices charged were fair and reasonable, and the partnership agreed to pay the same.

Although invoices and monthly account statements were variously issued showing the sales to "Dodson, Lacy," "Dodson, W.K.," or "Dodson–Falls Cattle," the parties agreed such designations were for the bookkeeping convenience of the partnership and all such accounts were the accounts of the partnership.

From 1981 through March 1993, Lacy, on a regular basis (usually once or more monthly), went to plaintiff's place of business and was informed of the partnership account balances, either by plaintiff's employees orally advising him of the balance due or by their handing Lacy a monthly account statement showing the account balance as of the end of

---

**2.** Purchases after Lacy's death were paid for in cash.

the previous month, or by both such methods.

All monthly account statements prepared by plaintiff and delivered to Lacy contained the following printed notice: "LATE PAYMENT CHARGE: Accounts unpaid as of the 10th day of the month following statement date are past due and subject to the late payment charge. The rate charged is 1.5 percent per month on the unpaid balance. This equates to a rate of 18 percent A.P.R."

On at least one occasion Lacy questioned the balance due plaintiff, an arithmetical error was discovered, and the account was corrected to the satisfaction of Lacy. Otherwise, neither Lacy nor any of the defendants ever questioned the balance due on the partnership accounts until after Lacy's death.

Between 1981 and Lacy's death, Lacy on numerous occasions complained to plaintiff that the service charges should be at a rate less than the agreed upon rate of 1½ percent per month, but Lacy on each occasion agreed to payment of the service charges, and neither Lacy nor any of the defendants ever repudiated or attempted to rescind the long-standing agreement of plaintiff and the partnership with respect to payment of the service charges.

In September 1986, Lacy suffered a heart attack and was hospitalized in a Joplin hospital. At that time the accounts of the partnership had a balance of approximately $104,000. Because of concern as to the prospects of payment, Robert Rice (plaintiff's president) visited Lacy at the hospital and discussed with defendant Dorothy Dodson the amount of the balance. Dorothy Dodson made no objection to the account balance, and never objected to the account balance or service charges until after April 30, 1993.

After the hospitalization, plaintiff continued to be concerned about payment, in view of Lacy's health, and threatened to discontinue selling feed to the partnership unless arrangements were made for payment of the account in the event of Lacy's death. Lacy told plaintiff that plaintiff would be taken care of with life insurance and later told plaintiff the life insurance had been "taken care of." At Lacy's death, life insurance policies on his life were in existence, but the beneficiaries refused to pay the proceeds of the policies to plaintiff to satisfy the account.

On March 9, 1993, Lacy met with plaintiff's representatives at plaintiff's place of business in Golden City, inquired as to the balance owing by the partnership to plaintiff, and was informed by plaintiff that the balance due, as of February 28, 1993, was $203,957.33. Lacy made no objection to the account as stated. On March 9, 1993, Lacy paid to plaintiff, on behalf of the partnership, the sum of $16,251.30, leaving a balance due as of February 28, 1993, of $187,706.03.

A day or two after Lacy's death, defendants called plaintiff, inquired as to the balance due, and made no objection to the account balance. After Lacy's death, and prior to April 30, 1993, Robert Rice met with defendants and discussed the partnership accounts. Defendants made no objection to the balance due.

The evidence was undisputed that plaintiff informed Dorothy Dodson of the account balance in 1986 and again in April 1993, after Lacy's death, without objection by Dorothy Dodson. Defendant Dorothy Dodson failed to testify, and the court finds that her testimony would have been unfavorable to defendants on all factual issues.

There was no evidence of fraud on the part of plaintiff and, except for occasions on which arithmetical errors were made, discovered and promptly corrected, there was no evidence of mistake on the part of either plaintiff or defendants.

On Count I, plaintiff is entitled to judgment in the sum of $17,912.02 for invoices after February 28, 1993, (and ending March 30, 1993), together with interest thereon at 18 percent per annum from and after April 30, 1993, and plaintiff is entitled to judgment against defendants on Count II for $187,706.03 (the agreed upon balance as of February 28, 1993), together with interest thereon at 18 percent per annum from and after March 9, 1993.

The evidence supports the finding that on March 9, 1993, an account was stated with respect to the balance, $203,957.33, owed by the partnership to plaintiff on February 28,

1993. The statement of facts portion of defendants' brief says:

"Mr. Rice testified specifically about the monthly account statements dated February 28, 1993. The amount due on the Lacy Dodson statement was $38,655 and the W.K. Dodson & Sons statement was $165,-345.78. Mr. Rice stated that the March 1993 monthly statements reflected payment on the two accounts dated March 9, 1993, a payment of $14,701.33 was applied to the Lacy Dodson account and $1,549.97 was applied to the W.K. Dodson & Sons account. Mr. Rice stated Lacy Dodson was shown the February 1993 statement at the time he made the payments in March. Rice claimed Lacy Dodson did not question the amount of the February monthly account statement when he made the payment in March. Rice never received a notice, orally or in writing, that Lacy Dodson thought the amount of the February monthly account statement was incorrect. (transcript page references omitted).

Robert Rice testified that Dorothy kept the books for the partnership, and that testimony was not challenged. It was at Lacy's request that statements were not mailed monthly to the partnership. Monthly statements were found among Lacy's papers after his death.

Rice testified that Lacy "reviewed his account every month, he knew what it was." It was undisputed that the purchases represented by the invoices on which the award on Count I was based were made and not paid for.

Rice testified: Lacy came in and picked them up as he paid for them. When he came in, we would give him his statement, the last statement printed. Lacy always picked up the tickets and the monthly statements. Lacy would take the tickets and the monthly statements home. That was his procedure through the 12 or 13 years we sold feed to him. The monthly statement ages the account and tells how much feed was 30 to 60, 60 to 90, and over 90 days old. It tells how much feed has been bought this month, payments made, and what the finance charges are. He never mailed a check to us. He came in to pay. In March 1993, Lacy knew that the balance due was right. No invoices were made for finance charges, but at the time of each payment we delivered to Lacy a receipt for the payment and indicated on each receipt the portion of each payment allocated to finance charges. One time I met Lacy in Avilla and had a real heated discussion about the finance charges. I told Lacy "we're not in the banking business, we need our money."

Defendants argue that no account was stated because: "Rice never mailed or delivered but merely displayed the statement of account to Lacy [on March 9, 1993]"; "Lacy had always objected and complained about the interest rate to Mr. Rice"; "the time involved in this case was not a reasonable time in which to impute an account stated."

Defendants overlook the testimony of Rice that Lacy would take the tickets and monthly statements home, and did so for 12 or 13 years. It is true that Lacy complained about the finance charges, but he continued to pay them knowingly and voluntarily. The events of March 9, 1993, including partial payment on the account stated, together with Lacy's failure to object thereafter, support the trial court's judgment with respect to Count II. Lacy had the legal authority to bind the partnership to the account stated. Dorothy's silence, after being informed of the account, provides unnecessary support for the trial court's holdings.

■ Defendants' contention that the dealings between plaintiff and the partnership ran afoul of the usury statutes is unsound. In *Woods v. Evans Products Co.*, 574 S.W.2d 488 (Mo.App.1978), the court said, at 491[2–4]:

"[A] seller may set a time sale price higher than a cash price and ... the difference between those two prices is not subject to the usury statute....

"The well established traditional view has been that usury applies only to a loan of money and has no application to the sale of goods; that therefore a seller can establish a higher price for sale on time than for cash without raising any question of usury; and that such a sale stands separate and apart from any financing arrangement sub-

sequently effected, such as the acquisition at a discount by a financial institution of the buyer's purchase note. Missouri has long followed this rule, the leading cases being the decisions by this court in *General Motors Acceptance Corporation v. Weinrich*, 218 Mo.App. 68, 262 S.W. 425 (1924) and *Wyatt v. Commercial Credit Corporation*, 341 S.W.2d 348 (Mo.App. 1960).

.    .    .    .    .

" '[I]f there is a real and bona fide purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price * * * And if the sale be a real and not a pretended transaction, it will not make any difference even though the seller have a cash price and a larger price where the sale is on time or credit.' " (quoting *Weinrich*).

At p. 496[7] the court said: "All the Missouri decisions unite in declaring that the ultimate question in a case of this sort, on which the one asserting usury has the burden of proof, is whether the transaction was a bona fide sale of merchandise rather than a loan of money."

Similarly, in *Redd v. Household Finance Corp.*, 622 S.W.2d 255 (Mo.App.1981), the court said, at 257[1, 2]:

"In Missouri it is well accepted that usury is the taking or exacting of interest at a rate in excess of that allowed by law for the loan or use of money. *Wyatt v. Commercial Credit Corp.*, 341 S.W.2d 348, 351 (Mo.App.1960). It is equally well accepted that § 408.030, Missouri's usury statute, applies only to a loan of money and has no application to the bona fide sale of goods. *Woods v. Evans Products Co.*, 574 S.W.2d 488, 491 (Mo.App.1978)."

In *Wyatt v. Commercial Credit Corporation*, 341 S.W.2d 348 (Mo.App.1960), the court said, at 352:

"[I]f there is a real and bona fide purchase, not made as the occasion or pretext for a loan, the transaction will not be usurious even though the sale be for an exorbitant price, and a note is taken, at legal rates, for the unpaid purchase money.

The reason is that the statute against usury is striking at and forbidding the exaction or receipt of more than a specified legal rate for the hire of money and not of anything else; and a purchaser is not like the needy borrower, a victim of a rapacious lender, since he can refrain from the purchase if he does not choose to pay the price asked by the seller."

See, generally, 14 A.L.R.3d 1065—"Advance in price for credit sale as compared with cash sale as usury"; 47 C.J.S. Interest and Usury § 125; 45 Am.Jur.2d Interest and Usury § 123.

Defendants first and second[3] points have no merit.

■ Defendants' third point is that the trial court erred "in granting judgment against Mark Dodson and Stephen Dodson in that plaintiff failed to plead and prove that they were liable in any capacity for the account debt because there was no evidence that they were liable on the account directly as partners and no evidence of the existence of the estate of [Lacy] or their appointment as personal representatives thereof."

This point, advanced without citation of authority, was not presented to the trial court.

Rule 55.13 reads, in pertinent part:

"It shall be sufficient to aver the ultimate fact of the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity.... When a person desires to raise an issue as to ... the capacity of any party to ... be sued or the authority of a party to ... be sued in a representative capacity, the person shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge. When a party so raises such issue, the burden of proof thereon shall be placed upon the opposite party."

The caption of the petition designated the defendants as follows: "Stephen Lee Dodson and Mark David Dodson, Personal Representatives of the Estate of William Lacy Dodson, Deceased, and Dorothy Dodson, Defen-

---

**3.** It is unnecessary to determine whether there is an additional statutory basis for invalidating de-

fendant's claim of usury. See §§ 408.035(2) and 408.015(2).

dants." The body of the petition pleaded that Lacy died April 7, 1993, and that prior to his death he and Dorothy engaged in business as a general partnership.

There was no evidence that either Stephen Dodson or Mark Dodson was ever a member of the partnership. Mark Dodson was the only trial witness for the defendants, and his testimony was presented in support of the counterclaim. In his individual capacity, Mark Dodson had no interest in the counterclaim. The standing of Stephen Dodson and Mark Dodson to prosecute the counterclaim stemmed from the fact that they were personal representatives of the estate of Lacy.

It is unnecessary to decide whether defendants waived their third point by failure to comply with Rule 55.13 by not raising the issue by specific negative averment. The fact that Mark Dodson and Stephen Dodson prosecuted the counterclaim in their representative capacity, and Dorothy Dodson joined with them in the counterclaim, estops all defendants from raising the third point.

The judgment is affirmed.

SHRUM, C.J., and MONTGOMERY, J., concur.